United States District Court
Middle District of Florida
Jacksonville Division

**MAXUM INDEMNITY COMPANY,**

   *Plaintiff,*

V.            **NO. 3:18-CV-477-J-34PDB**

**FUN ZONE ENTERTAINMENT, LLC, ET AL.,**

   *Defendants.*

---

# Report and Recommendation

Following a July 2017 shooting at an internet café in Lake City, Florida, Maxum Indemnity Company (an insurer) brought this declaratory-judgment action against six defendants: Fun Zone Entertainment, LLC (the alleged owner of the café and the named insured), Bernard McNeal (the alleged operations manager of the café), Ching Ping and Allen Coleman (the alleged owners of the property used for the café), Terrance Jones (a shooting victim and an alleged employee of Fun Zone), and Charles Shaw (another shooting victim and another alleged employee of Fun Zone). Doc. 1. Maxum seeks to resolve a dispute over coverage for pending negligence actions brought in state court by Jones and Shaw.[1] Doc. 1. This Court dismissed the claims

---

[1]*See Shaw v. Fun Zone Palace, LLC, etc.*, No. 17-314-CA (Fla. 3d Cir., Columbia County), and *Jones v. Fun Zone Palace, LLC, etc.*, No. 17-315-CA (Fla. 3d Cir., Columbia County).

At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). State court records generally satisfy this standard. *Paez v. Sec'y, Fla. Dep't of Corr.*, 931 F.3d 1304, 1306–07 (11th Cir. 2019).

This report and recommendation takes judicial notice of records in Jones's and Shaw's state actions. Judicial notice is appropriate because the records can be readily and accurately determined from a source whose accuracy cannot reasonably be questioned (the state court). State records material to the pending motion are in the record. *See* Docs. 1-1, 101-1–101-5.

against Fun Zone upon Maxum's notice of dismissal, which had been spurred by unknowns about the membership of Fun Zone (a limited liability company) and concerns about complete diversity. Docs. 48, 49.

Before this Court is Jones and Shaw's third amended motion to "vacate" three stipulations (a stipulation of Maxum and the Colemans; a stipulation of Maxum and McNeal; and a stipulation of Maxum, Jones, and Shaw) and two resulting orders dismissing the claims against the Colemans and McNeal. Doc. 95. For the orders based on the stipulations of the other parties, Jones and Shaw believe the orders constitute merits adjudications binding against them. Doc. 95 at 2–6. For their own stipulation with Maxum, they contend they never authorized their counsel—since terminated—to enter into it, and they each provide an affidavit to that effect. Doc. 95 at 6–8; Docs. 95-1, 95-2.

Maxum opposes the motion, describing Jones and Shaw's positions with words that include "reckless," "frivolous," "brazen," "sham," "baseless," "unprecedented," "full of half-truths," "non-starter," "red herring," "tortured," "clearly erroneous," "throwaway," "factually wrong," "misinformed," "inconsistent," and "contrary to fundamental principles of process." Doc. 101.

The motion has been referred to the undersigned for a report and recommendation. Besides addressing the parties' arguments, this report and recommendation addresses an issue flagged by Jones and Shaw but not briefed by either side: whether there is an actual controversy—and thus subject-matter jurisdiction—without the named insured (Fun Zone) as a party.

---

Other state records, cited here primarily for background, are on the website for the Clerk of the Circuit Court and Comptroller for Columbia County, Florida: www.columbiaclerk.com.

## I.   Background

The background is long and includes various subjects: the happenings in the state actions, procedural irregularities in this action, a mystery about Fun Zone's membership and the attendant issue of diversity jurisdiction in this action, and accusations of misconduct in all of the actions. Given the recommendations and unusual arguments in the current motion, a detailed background follows.

### A.   *Jones's and Shaw's State Actions*

In August 2017, in the Circuit Court for Columbia County, Jones and Shaw, through Farah & Farah, P.A., filed individual actions against the Colemans and Fun Zone Palace, LLC (doing business as "Treasure Palace" or "Fish Arcade").[2]

In their state pleadings, Jones and Shaw allege that on July 21, 2017, at 1:30 a.m., two masked gunmen entered the internet café, hit Jones, hit Shaw with a gun, and shot both men. Doc. 1-1 at 4, 8, 11.[3] Jones and Shaw contend the negligence of others caused their injuries. Doc. 1-1 at 5–8, 12–15.

Jones and Shaw amended the state complaints to name the "correct entity" (Fun Zone Entertainment, LLC, instead of Fun Zone Palace, LLC), and add as defendants McNeal and Red Diamond Family Fun, LLC (also doing business as "Treasure Palace" or "Fish Arcade").[4]

In a dispute over service of process in the state actions, Jones and Shaw, through Farah & Farah, successfully argued that McNeal was an agent of Fun Zone and they had properly served Fun Zone through McNeal. Docs. 101-3, 101-4, 101-5.

---

[2] *See* Doc. 6 in No. 17-314-CA; Doc. 6 in No. 17-315-CA.

[3] Citations to state records filed in this case as exhibits are to the page numbers "stamped" through CM/ECF.

[4] *See* Doc. 20 in No. 17-314-CA (also Doc. 1-1 in this case); Doc. 20 in No. 17-315-CA.

Jones and Shaw again amended the state complaints to add as plaintiffs their wives; add as a defendant Hot Seat Entertainment, LLC (an alleged co-employer of Jones and Shaw); remove as a defendant Red Diamond (which had never appeared in the state actions); add an allegation that Jones and Shaw were employees—not contractors—of Fun Zone; and add claims relating to consortium and worker's compensation.[5] Hot Seat has never appeared in the state actions, there has been no motion for default against Hot Seat in the state actions, and Hot Seat is not a defendant in this action.

At various times during the state actions (May 17, May 22, and August 6, 2018), Jones and Shaw, through Farah & Farah, proposed settlement under Florida's offer-of-judgment/demand-for-judgment statute, Fla. Stat. § 768.79. Doc. 74-1.

The state actions, consolidated for trial only,[6] remain pending without an established trial date.

## B.  *Maxum's Federal Action*

Eight months after Jones and Shaw filed the state actions, in April 2018, Maxum filed this declaratory-judgment action against the parties in the state actions at that time (Fun Zone, the Colemans, McNeal, Jones, and Shaw) except for Red Diamond (later removed as a defendant in the state actions). Doc. 1.

In the federal complaint, Maxum alleges it issued Fun Zone a policy that excludes any claim for any injury to anyone working on Fun Zone's behalf (including as an employee) and any claim for any injury arising out of any physical abuse. Doc. 1 at 4–6. Maxum asks this Court to take jurisdiction; adjudicate the rights of the parties under the policy; declare the policy does not obligate Maxum to defend or indemnify the defendants in the state actions; award Maxum its fees, costs, and

---

[5]*See* Doc. 120 in No. 17-314-CA; Doc. 109 in No. 17-315-CA.

[6]*See* Doc. 229 in No. 17-314-CA; Doc. 216 in No. 17-315-CA.

expenses for defending the state actions; and award Maxum its costs for bringing this action. Doc. 1 at 6–7. In the state actions, Maxum moved to intervene and stay pending resolution of insurance coverage in this action, and Maxum noticed a hearing in state court on the motions.[7]

McNeal answered the declaratory-judgment complaint. Doc. 13. The Colemans answered the declaratory-judgment complaint. Doc. 12. And, through Farah & Farah (then-counsel in the state actions) and Liles Gavin, P.A. (since changed to and referred to here as "the Liles Firm"), Jones answered the declaratory-judgment complaint, Doc. 25, and Shaw answered the declaratory-judgment complaint, Doc. 24.

Observing Maxum had failed to identify the members of Fun Zone, this Court sua sponte ordered Maxum to provide citizenship information to establish subject-matter jurisdiction under 28 U.S.C. § 1332. Doc. 3. Maxum responded Fun Zone is an insolvent limited liability company organized under Florida law, its members had been "Pete Pital" and "Antwain Pital," and records connect the "Pitals" to Florida only. Doc. 5. But Maxum cautioned that the "Pitals" may not be real. Doc. 5 at 2.

This Court conducted a telephone conference on the matter.[8] Doc. 8. Maxum's counsel explained Maxum had undertaken defense of Fun Zone and McNeal in the state actions, defending Fun Zone primarily through McNeal as its registered agent. Maxum's counsel explained that use of "Pital" in multiple places in state filings had led him to believe the spelling was intentional and Fun Zone might be a shell company formed by McNeal, who had signed the insurance policy. Maxum's counsel expressed a desire to conduct discovery, including a deposition of McNeal, to

---

[7] *See* Docs. 56, 72, 79 in No. 17-314-CA; Docs. 54, 65, 71 in No. 17-315-CA.

[8] To date, no one has ordered the transcript of the telephone conference. The undersigned has read the rough transcript. Anyone may order the transcript through the court reporter. *See* Doc. 8 (minutes with court-reporter information).

determine who had made rental payments on behalf of Fun Zone. This Court directed Maxum to provide a supplemental memorandum and documentation. Doc. 8.

In a supplemental memorandum, Maxum represented the following facts. McNeal organized Fun Zone and applied for insurance as Fun Zone's sole "member or manager." Doc. 14 at 1. In October 2016, McNeal sold his ownership interest in Fun Zone to Fortune Amusement, LLC. Doc. 14 at 1–2. Suresh Kumar Patel, a Florida citizen, is the sole member of Fortune Amusement. Doc. 14 at 2. As proof of the sale, Maxum attached a purchase agreement signed by McNeal as the "General Manager" of Fun Zone and Patel as the "[G]eneral Manager" of Fortune Amusement, under which McNeal agreed to sell Fun Zone to Fortune Amusement for $9,000. Doc. 14-1 at 10–12. Maxum contended complete diversity exists because Maxum is a citizen of Georgia and Connecticut and all defendants are citizens of Florida. Doc. 14 at 3.

Observing that the documentation Maxum submitted suggests that Patel was the registered agent—not member—of Fortune Amusement, *see* Doc. 14-1 at 15, this Court directed Maxum to provide an additional supplemental memorandum and authorized Maxum to conduct jurisdictional discovery. Doc. 15.

In a second supplemental memorandum, Maxum explained it had deposed Patel and learned that the sale reflected in the executed purchase agreement between McNeal and Fortune Amusement had never transpired. Doc. 27 at 1–2. According to Patel, while he was monitoring Fun Zone to determine whether he should complete the transaction, the Brevard County Sheriff's Office investigated Fun Zone and Red Diamond and charged them with keeping a gambling house, in violation of Fla. Stat. § 849.01, and possessing or owning a slot machine, in violation of Fla. Stat. § 849.15. Doc. 27-1 at 15–17;[9] *see* Doc. 27-3 (police report). Patel testified, "[W]hen … the police department go over there and the police say this is not legal, this is not legal, I want

---

[9]Citations are to the original page numbers in the deposition transcript, not those "stamped" through CM/ECF.

to wash my hand[s] and give it back." Doc. 27-1 at 7. Based on Patel's testimony, Maxum contended the only member of Fun Zone "has always been McNeal, a citizen of Florida," making diversity complete. Doc. 27 at 2. That same day, Maxum obtained a clerk's default against Fun Zone in this action. Docs. 26, 28.

The next day, this Court notified the parties that its "sua sponte inquiry into its subject matter jurisdiction is satisfied." Doc. 29.

But complications ensued.

McNeal moved to quash service of the notice of Patel's deposition and to quash a subpoena to Patel for documents, or for leave to re-depose Patel. Doc. 33. McNeal explained Maxum had not informed the other parties of the deposition and, therefore, Patel had not been cross-examined. Doc. 33.

Three stipulations followed. Docs. 34, 39, 40. Because they are the stipulations at issue in the current motion, they are presented nearly verbatim, omitting only full names and citations to the state actions. Each stipulation is "signed" only by counsel for the respective parties through electronic names after "/s/." Docs. 34, 39, 40.

Maxum and the Colemans filed the first stipulation:

### JOINT STIPULATION OF DROPPING DEFENDANT BASED ON THEIR STIPULATION OF NO COVERAGE

Plaintiff … Maxum … and Defendants … the "Colemans" … stipulate as follows:

1. The Colemans admit all the allegations in Maxum's complaint, with the exception of paragraph 22, since Maxum is not defending the Colemans in the underlying actions. (DE 1.)

2. The Colemans further agree with Maxum and stipulate that there is and can never be a duty to defend the Colemans or indemnify the Colemans under the Maxum policy in the underlying actions[.]

3. In exchange for this irrevocable stipulation from the Colemans, Maxum agrees to drop the Colemans from this action, with Maxum and the Colemans to bear their own attorney's fees and costs.

4. Nothing in this stipulation should be construed as a voluntary dismissal of this action by Maxum, or that this case should be administratively closed.

Doc. 34.

Two days later, based on that stipulation, this Court dismissed Maxum's claims against the Colemans, directed the parties to bear their own fees and costs, and directed the clerk to "terminate" the Colemans from the docket. Doc. 36.

After entry of that stipulation, counsel with Farah & Farah, on behalf of Jones and Shaw, emailed Maxum's counsel: "I want to review closer the stipulation between you and Colemans to discuss with my clients it's [sic] bearing on my clients' interest in the dec action and then I may want to discuss with you." Doc. 91-1 at 1.

Maxum and McNeal then filed the second joint stipulation:

### JOINT STIPULATION OF DROPPING DEFENDANT BASED ON STIPULATION OF NO COVERAGE

Plaintiff … Maxum … and Defendant … McNeal … stipulate as follows:

1. McNeal admits all the factual allegations in Maxum's complaint as they pertain to the scope and existence of coverage under the Maxum policy. (DE 1.)

2. On 07/21/2017, two armed individuals wearing masks entered the premises at 1472 West U.S. Highway 90 and/or 622 SE Arlington Boulevard in Lake City, Florida, and physically struck and then subsequently shot … Shaw … and … Jones … (the "Incident").

3. The premises where the Incident occurred was operated by … Fun Zone …. At the time of the Incident, Shaw and Jones were either employees of Fun Zone, independent contractors of Fun Zone, or non-employee laborers of Fun Zone.

4. Maxum issued a Commercial General Liability insurance policy to Fun Zone, bearing policy number BDG-3011613-02, and effective from 11/18/2016 to 07/28/2017 (the "Policy").

5. Shaw and Jones filed lawsuits against McNeal, Fun Zone, and others arising out of the Incident[.]

6. The Incident and Underlying Actions were reported to Maxum for coverage (the "Claim"). Maxum is currently defending McNeal in the Underlying Actions.

7. McNeal agrees with Maxum and stipulates that there is not, and can never be, a duty to defend McNeal or indemnify McNeal under the Policy with respect to the claims in the Underlying Actions, or any claims or lawsuits arising out of the Incident or Claim. McNeal makes this stipulation regardless of any amendments that could ever be made to the complaints in the Underlying Actions.

8. McNeal further agrees and stipulates that he will not assign, and has not previously assigned, any rights he has or may ever have under the Policy to any other person or entity with respect to the claims against him, or that could ever be made against him, arising out of the Underlying Actions, the Incident, or the Claim.

9. McNeal further agrees and stipulates that he will not assign, and has not previously assigned, any rights that Fun Zone has or may ever have under the Policy to any other person or entity with respect to the claims against Fun Zone, or that could ever be made against Fun Zone, arising out of the Underlying Actions, the Incident, or the Claim.

10. McNeal further agrees and stipulates that he will cooperate with Maxum to the full extent necessary with regard to Maxum's prosecution of its claims in this action.

11. In exchange for the irrevocable stipulations from McNeal in paragraphs 7 through 10, Maxum agrees as follows:

a. Maxum agrees to drop McNeal from this action, with Maxum and McNeal to bear their own attorney's fees and costs;

b. Maxum agrees to release and forever discharge McNeal from any claim that Maxum has, or may ever have, for

9

reimbursement of defense fees and costs incurred by Maxum defending McNeal in the Underlying Actions; and

c. Maxum agrees that it will not seek attorney's fees or costs expended by Maxum in this action against McNeal.

12. Maxum and McNeal further agree and stipulate that McNeal's personal counsel will defend McNeal in the Underlying Actions. Maxum's appointed defense counsel and McNeal's personal counsel will enter a joint stipulation and substitution of counsel in the Underlying Actions following the execution and filing of this document with the Court.

13. Maxum and McNeal agree and stipulate that the terms and agreements set forth herein are not to be construed as an admission by McNeal as to any allegations set forth in the Underlying Actions and are not to be construed as an admission by McNeal as to the occurrence of the Incident, location of the Incident or status of Claimants involved in the incident, for purposes of McNeal's defense of the Underlying Actions. Maxum and McNeal agree that the stipulations set forth herein solely deal with coverage.

14. As a result of the stipulations made herein, and upon approval by the Court, McNeal withdraws his Motion to Quash Service of the Notice for Deposition and Subpoena for Document Production of Suresh Kumar Patel (DE 33).

15. Maxum and McNeal make the stipulations and agreements in this document regardless of this Court's personal or subject matter jurisdiction over this action.

16. Nothing in this stipulation should be construed as a voluntary dismissal of this action by Maxum, or that this case should be administratively closed.

Doc. 39. As agreed in the stipulation, defense counsel appointed by Maxum to represent McNeal in the state actions and McNeal's personal counsel (the same counsel for him in this action), entered a "joint stipulation as substitution of counsel" in the state actions, and McNeal's personal counsel took over his defense there.[10]

---

[10]*See* Doc. 100 in No. 17-314-CA; Doc. 86 in No. 17-315-CA.

On the same day as the entry of that stipulation (August 31, 2018), counsel with Farah & Farah, on behalf of Jones and Shaw, emailed Maxum's counsel: "Please [c]all me to do the same for my clients and to withdraw your motion to stay in the state court actions." Doc. 91-2 at 1. An email exchange followed:

> Maxum's counsel: "Larry, I am in the process of finalizing the stip and should be sending it to you in the next half-hour. Is that OK with your schedule? Please advise." Doc. 91-3 at 1.

> (One hour later) Maxum's counsel: "Larry, attached is a draft stipulation of no coverage and dropping parties. Please review it (or have your clients review it) and get back to me whether you approve. I'd like to file it today but understand if we aren't able to make that happen." Doc. 91-4 at 1.

> (Three days later) Maxum's counsel: "Hello Larry, I thought I would touch base to let you know that I am available today if you want to finalize the stipulation. I am also fine with waiting until the morning. After the stip gets finalized I will cancel tomorrow's hearing [in the state actions]. Thanks." Doc. 91-5 at 1.

> (Twelve minutes later) Jones and Shaw's counsel: "We have reviewed the proposed stipulation and it is approved with two very minimal changes. Unfortunately, I have the version you sent on my computer at the office to send to you first thing in the morning as I am with my family today. If I can pull up and redline from my phone today I will." Doc. 91-6 at 1.

> (Hours later) Jones and Shaw's counsel, after the changes were sent, accepted, and incorporated into the stipulation: "This revised Stipulation is approved." Doc. 91-7 at 1; Doc. 91-8 at 1; Doc. 91-9 at 1.

> (The next day) Maxum's counsel: "Larry, we have fully reviewed the proposed changes and are fine with the proposed language in paragraph #3. However, we added a single sentence to paragraph #3 at the end: 'Regardless of the outcome in their underlying cases, Shaw and Jones agree to never attempt to collect against the Maxum policy.' Based on our discussion I don't think it's controversial. Absolutely no other changes to the document. Please review and approve and let me know, so I can file. I would like to file today, so would appreciate your prompt attention." Doc. 91-10 at 1.

(Fourteen minutes later) Jones and Shaw's counsel: "Yes the revised stipulation is ok. Please file it and copy [counsel with the Liles Firm] as well." Doc. 91-11 at 1.

Six minutes after the last email from Jones and Shaw's counsel to Maxum's counsel, on September 4, 2018, Maxum's counsel filed the third stipulation:

## JOINT STIPULATION OF DROPPING DEFENDANTS BASED ON STIPULATION OF NO COVERAGE

Plaintiff … Maxum … and Defendants … Shaw … and … Jones … stipulate as follows:

1. Shaw and Jones admit all the factual allegations in Maxum's complaint that in anyway pertain to the scope and existence of coverage under the Maxum policy. (DE 1.)

2. On 07/21/2017, two armed individuals wearing masks entered the premises at 1472 West U.S. Highway 90 and/or 622 SE Arlington Boulevard in Lake City, Florida, and physically struck and then subsequently shot Shaw and Jones (the "Incident").

3. Upon information and belief, the premises where the Incident occurred was operated by … Fun Zone … through BERNARD MCNEAL as its manager or the operator has not been properly identified to date. At the time of the Incident, Shaw and Jones were either employees of Fun Zone, independent contractors of Fun Zone, or non-employee laborers of Fun Zone or of the operator if not Fun Zone. Regardless of the outcome in their underlying cases, Shaw and Jones agree to never attempt to collect against the Maxum policy.

4. Maxum issued a Commercial General Liability insurance policy to Fun Zone, bearing policy number BDG-3011613-02, and effective from 11/18/2016 to 07/28/2017 (the "Policy").

5. Shaw and Jones filed lawsuits against McNeal, Fun Zone, and others arising out of the Incident[.]

6. The Incident and Underlying Actions were reported to Maxum for coverage (the "Claim").

7. Shaw and Jones agree with Maxum and stipulate that there is not, and can never be, a duty to defend or duty to indemnify [McNeal,

Fun Zone, or the Colemans] under the Policy regarding the claims in the Underlying Actions, or any claims or lawsuits in any way arising out of the Incident or Claim. Shaw and Jones make this stipulation regardless of any amendments that they could ever make to the complaints in the Underlying Actions.

8. Shaw and Jones further agree and stipulate that they will cooperate with Maxum to the fullest extent necessary regarding Maxum's prosecution of its claims in this action and its position that it owes no coverage.

9. In exchange for the irrevocable stipulations from Shaw and Jones, Maxum agrees to drop Shaw and Jones from this action, with Maxum, Shaw, and Jones to separately bear their own attorney's fees and costs.

10. Maxum further agrees to release and forever discharge Shaw and Jones from any claim that Maxum has or may ever have, for reimbursement of attorney's fees and costs with regard to this action or the Underlying Actions.

11. Maxum, Shaw, and Jones agree that the stipulations in this document deal solely with insurance coverage.

12. Maxum, Shaw, and Jones make the stipulations and agreements in this document regardless of this Court's personal or subject matter jurisdiction over this action.

13. Nothing in this stipulation should be construed as a voluntary dismissal of this action by Maxum, or that this case should be administratively closed.

Doc. 40.

On the same day (September 4, 2018), in the state actions, Maxum withdrew the motions to stay and canceled a hearing on those motions.[11] Doc. 101-1. Over the

---

[11] *See* Doc. 99 in No. 17-CA-314; Doc. 91 in No. 17-CA-315.

next few weeks, in the state actions, counsel with Farah & Farah, on behalf of Jones and Shaw, filed documents about dates for depositions and a mediation.[12]

In this action, unsure of the posture of the case in light of McNeal's outstanding motion to quash service of the notice of Patel's deposition and the subpoena to Patel for documents, Doc. 33, this Court sua sponte scheduled another telephone conference. Doc. 42; Doc. 86 at 3. McNeal's counsel represented that McNeal is not and was never a member of Fun Zone. Doc. 86 at 5. Because the representation again called into question Fun Zone's membership and the existence of complete diversity, this Court directed the parties to confer and notify this Court of the status of jurisdiction and the motion to quash. Doc. 43; Doc. 86 at 4–28.

A few weeks later, Maxum filed a notice it was voluntarily dismissing the "action" against Fun Zone without prejudice, citing Federal Rule of Civil Procedure 41(a)(1)(A)(i) and stating, "the dismissal of Fun Zone unequivocally creates diversity jurisdiction and allows the Court to adjudicate the rights of the remaining parties." Doc. 44 at 1. Maxum also asked this Court to dismiss from this action McNeal, Jones, and Shaw pursuant to the stipulations. Doc. 44 at 2.

A few days after the voluntary dismissal of Fun Zone (twenty-four days after entry of the stipulation of Maxum, Jones, and Shaw), Farah & Farah and counsel with the firm moved to withdraw as counsel for Jones and Shaw at the clients' request. Doc. 45. Referencing the stipulation of Maxum, Jones, and Shaw, counsel asked this Court to "refrain from entering any orders prejudicial to [Jones or Shaw] until they have been afforded an opportunity to retain new counsel or make their positions known regarding this issue." Doc. 45 at 2. Farah & Farah and counsel with

---

[12]*See* Docs. 102–05, 108 in No. 17-CA-314; Docs. 93, 94, 97 in No. 17-CA-315.

the firm also moved and were permitted to withdraw from representing Jones and Shaw in the state actions.[13] Doc. 101-2.

This Court sua sponte scheduled another telephone conference. Doc. 46. At the conference, Jones and Shaw stated their desire for Farah & Farah, the Liles Firm, and counsel with both firms to cease representing them and explained they would be represented by Willie Gary. Doc. 48; Doc. 80 at 9–11, 13.

This Court: (1) dismissed the claims against Fun Zone based on Maxum's notice of voluntary dismissal and expressed renewed satisfaction with its inquiry into subject-matter jurisdiction; (2) terminated McNeal's motion to quash; (3) dismissed McNeal based on the stipulation of Maxum and McNeal and retained "jurisdiction to enforce the terms of the stipulation"; (4) permitted Farah & Farah, the Liles Firm, and counsel with those firms to withdraw and relieved them of further responsibility beyond work necessary to transition the defense to new counsel; (5) directed Jones and Shaw's new counsel to enter an appearance; and (6) directed Maxum's counsel and Jones and Shaw's new counsel to confer to resolve the "status of the case." Doc. 48; Doc. 80 at 22–23. A corresponding order followed. Doc. 49.

The law firm of Gary, Williams, Parenti, Watson, & Gary, P.L.L.C, and counsel with the firm entered notices of appearance for Jones and Shaw in the state and federal actions.[14] Docs. 50–55. The state court permitted appointed defense counsel for Fun Zone (Conroy Simberg, P.A.) to withdraw on September 20, 2018, and Fun Zone has not appeared in any of the actions since.[15]

---

[13]*See* Docs. 109, 116 in No. 17-CA-314; Docs. 98, 105 in No. 17-CA-315.

[14]*See* Doc. 113 in No. 17-CA-314; Doc. 102 in No. 17-CA-315.

[15]*See* Doc. 107 in No. 17-314-CA; Doc. 96 in No. 17-315-CA. In the motion to withdraw filed in the state actions, counsel for Fun Zone represented:

> Documents show that Mr. McNeal was not the principal of the company, [Fun Zone], after 2016. The original lease signed by [McNeal] for the location where the incident occurred was between Coleman and Red Diamond Family

In this action, through new counsel, Jones and Shaw filed a motion assertedly under Federal Rule of Civil Procedure 60(b)(3) and (6). Doc. 56. They asked this Court to "vacate" five filings: (1) the stipulation of Maxum and the Colemans, Doc. 34; (2) the order dismissing the claims against the Colemans, Doc. 36; (3) the stipulation of Maxum and McNeal, Doc. 39; (4) the order dismissing the claims against McNeal, Doc. 49; and (5) the stipulation of Maxum, Jones, and Shaw, Doc. 40. Doc. 56. An amended motion, Doc. 57, a second amended motion, Doc. 58, and a response to all three, Doc. 61, followed.

While the second amended motion for relief was pending, Maxum moved for clarification of the deadlines in the case management and scheduling order. Doc. 65. This Court granted the motion to the extent it vacated the case management and scheduling order, stayed the case pending a decision on the second amended motion for relief, and directed the clerk to administratively close the case. Doc. 67. (To date, no new case management and scheduling order has been entered, and the case remains administratively closed.)

---

Fun, LLC only. It is alleged that the lease to the subject premises was altered by an otherwise uninsured owner of the property to reflect the name of [Fun Zone] well after [McNeal's] signature was placed on the lease and after the incidents described in Plaintiff's Complaint.

[] Despite Mr. McNeal selling [Fun Zone] to Suresh Kumar Patel, who paid $9,000 in cash to Mr. McNeal, Suresh Patel recently testified under oath in Federal Court that despite signing documents evidencing a sale by [McNeal] and Suresh Patel, Mr. Patel indicated that he really didn't close on the sale.

[] Mr. McNeal (who we represent), Mr. Antwain Pital and Suresh Patel, the purchaser of [Fun Zone] have a conflict over who owned [Fun Zone].

[] Conroy Simberg has a conflict of interest with the Pitals as documented owners of [Fun Zone] and our current client, [McNeal], has a conflict with Suresh Kumar Patel, Antwain Pital and Pete Pital who all now deny that they purchased [Fun Zone].

Doc. 107 in No. 17-314-CA; Doc. 82 in No. 17-315-CA.

Jones and Shaw, arguing lack of subject-matter jurisdiction for failure to establish complete diversity, next moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) or to remand under 28 U.S.C. § 1447 (even though this action had not begun in state court) and "vacate" the stipulations and related orders of dismissal. Doc. 68. They thereafter withdrew the motion, Doc. 71, and this Court terminated the motion, Doc. 72.

Jones and Shaw then moved to reopen this case and lift the stay. Doc. 73. Maxum opposed the motion and asked this Court to sanction Jones, Shaw, and their new counsel by ordering them to pay fees and costs incurred in responding to "frivolous motions." Doc. 74.

Jones and Shaw withdrew the motion, Doc. 75, but in its place filed a third amended motion for relief, Doc. 76. This Court sua sponte struck that motion, explaining they cannot continue to unilaterally amend motions and if they want to amend the second amended motion for relief, they must file a motion to withdraw or amend the then-pending motion after conferring with opposing counsel under Local Rule 3.01(g). Doc. 78. Because of its outstanding request for sanctions, Maxum opposed withdrawal of the motion to reopen. Doc. 77.

Ruling on the motion to reopen this case and lift the stay, this Court: (1) denied Maxum's request for sanctions as improperly presented in a response and for violating Local Rule 3.01(g); (2) denied Jones and Shaw's motion to reopen the case and lift the stay, explaining the stay remained warranted until a decision on the second amended motion for relief; (3) denied Jones and Shaw's motion to reopen the case and lift the stay to the extent they sought leave to move to dismiss in light of their representation they no longer wanted to move to dismiss; and (4) referred the second amended motion for relief to the undersigned for a report and recommendation. Doc. 79.

Jones and Shaw filed an "emergency" motion under Rule 60(a) and (b) for relief from the order striking the third amended motion for relief, contending there was "clear error and oversight on the part of the Court" in finding they unilaterally filed the third amended motion for relief and violated Local Rule 3.01(g). Doc. 82. Maxum opposed the motion, observing there is no emergency and complaining, "As with virtually everything else that Defendants' new counsel has said or written since joining this litigation, their recent 'emergency' motion is full of half-truths and blatant misdirection." Doc. 83.

This Court sua sponte scheduled a hearing on the motion. Doc. 84. At the hearing, this Court denied the motion and directed the court reporter to file any transcript under seal.[16] Doc. 85.

Jones and Shaw moved for leave to file the third amended motion for relief. Doc. 88. Maxum opposed the motion. Doc. 91. The undersigned granted the motion for several reasons, including because permitting amendment would allow Jones and Shaw to consider whether they are applying the correct standards in light of the interlocutory nature of the dismissal orders and allow them to argue based on the correct standards. Doc. 92.

Jones and Shaw filed the third amended motion for relief, Doc. 95, and response, Doc. 101, now before this Court.[17]

---

[16]To date, no one has ordered the transcript. The undersigned has read the rough transcript. The discussion at the hearing addressed procedural irregularities not pertinent to the current motion.

[17]Over the last month, much has happened in the state actions. A mediation resulted in impasse. *See* Doc. 206 in No. 17-314-CA; Doc. 197 in No. 17-315-CA. Jones, Shaw, and the Colemans entered a stipulation of dismissal of all claims against the Colemans. *See* Doc. 214 in No. 17-314-CA; Doc. 205 in No. 17-315-CA. McNeal moved to dismiss claims against him based on asserted fraud on the court through inconsistent positions in the state and federal actions. *See* Doc. 233 in No. 17-314-CA; Doc. 220 in No. 17-315-CA. Jones and Shaw's counsel moved to withdraw in those actions based on the fraud accusation and Jones's and Shaw's affidavits they had not authorized the stipulation of all claims against the Colemans (similar to their affidavits here). *See* Docs. 220, 226, 228, 238 in No. 17-314-CA; Docs. 215, 225 in No.

## II.   Motion

As with previous versions of the motion, Jones and Shaw file the third amended motion for relief now before this Court under Rule 60(b)(3) and (6). Doc. 95. They ask this Court to "vacate" the stipulation of Maxum and the Colemans, Doc. 34; the order dismissing the claims against the Colemans, Doc. 36; the stipulation of

---

17-315-CA. McNeal filed an objection to withdrawal, contending there is no basis for withdrawal so close to trial, at that time set to begin on February 3, 2020. *See* Doc. 240 in No. 17-314-CA; Doc. 226 in No. 17-315-CA. The state court granted that motion and removed the trial date from the calendar. *See* Docs. 246, 247 in No. 17-314-CA; Docs. 234, 245 in No. 17-315-CA. As of the filing of this report and recommendation, only one current lawyer for Jones and Shaw has moved to withdraw in this action and only because he cares for his wife undergoing significant medical treatment and he no longer works for Gary, Williams, Parenti, Watson, & Gary, P.L.L.C. Doc. 103.

In the motion to dismiss based on asserted fraud, McNeal argues Jones and Shaw have acted improperly by: (1) arguing there that McNeal stipulated to negligence through the stipulation of McNeal and Maxum filed in this action while arguing here that this federal Court should vacate that stipulation; (2) claiming there that their employer was "Fun Zone Entertainment, LLC, Treasure Palace and/or Fish Arcade, Fun Zone Palace, LLC, Hot Seat Entertainment, LLC, Allen Coleman, Ching Ping Coleman and Bernard McNeal," while claiming here—in affidavits—that their employer was Fun Zone; (3) representing to the state court default had been entered against Fun Zone even though it had not (it actually had, *see* Doc. 45 in No. 17-314-CA); and (4) successfully arguing that McNeal was an agent of Fun Zone and they had properly served Fun Zone through McNeal there while arguing the opposite here. *See* Doc. 233 in No. 17-314-CA; Doc. 220 in No. 17-315-CA.

Other recent events in the state actions include the following. The state court denied a motion for summary judgment by McNeal. *See* Doc. 218 in No. 17-314-CA; Doc. 209 in No. 17-315-CA. McNeal filed a motion asking the state court to preclude Jones and Shaw from mentioning any insurance coverage at the trial. *See* Doc. 236 in No. 17-314-CA; Doc. 223 in No. 17-315-CA. McNeal filed a motion asking the state court to exclude as evidence federal filings (the stipulation of Maxum and McNeal, the federal complaint, and an unspecified response by Maxum). *See* Doc. 244 in No. 17-314-CA; Doc. 232 in No. 17-315-CA. Jones and Shaw, through counsel, filed a motion to extend deadlines to file motions in limine based on the pendency of the motion to withdraw, contending, "If Counsel files Motions or Responses to Motions on [Jones and Shaw's] behalf, the undersigned will be subject to criticism and additional financial exposure for doing a poor job," and "Counsel's interests in the outcome are adverse to [the Joneses' and the Shaws's interests]." *See* Doc. 245 in No. 17-314-CA; Doc. 233 in No. 17-315-CA.

Maxum and McNeal, Doc. 39; the order dismissing the claims against McNeal, Doc. 49; and the stipulation of Maxum, Jones, and Shaw, Doc. 40. Doc. 95 at 1.[18]

## III.  Standard

Under Federal Rules of Civil Procedure 60(b)(3) and (6), a court may relieve a party from a final judgment or order based on an opposing party's fraud, misrepresentation, or misconduct or for "any other reason that justifies relief."

Federal Rule of Civil Procedure 54(b) explains what constitutes a final judgment or order in multiparty litigation. Where a court directs entry of final judgment as to fewer than all parties, unless the court "expressly determines that there is no just reason for delay," the order "does not end the action as to any of … the parties," and the court may revise the order "at any time before the entry of a judgment adjudicating all … the parties' rights and liabilities." Fed. R. Civ. P. 54(b). An order disposing of fewer than all parties therefore is interlocutory. *Bodine v. Fed. Kemper Life Assur. Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990); *Mullins v. Nickel Plate Mining Co., Inc.*, 691 F.2d 971, 973 (11th Cir. 1982).

An interlocutory order is not subject to vacatur under Rule 60(b). *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970). Accordingly, the stringent Rule 60(b) standard does not apply to an interlocutory order, *McKay v. Novartis Pharma. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014); *see James by James v. Sadler*, 909

---

[18]In the introductory paragraph, in listing with numbers all of the relief requested, Jones and Shaw start with "(3)," appearing to have deleted "(1)" and "(2)." Doc. 95 at 1. In the closing paragraph, they include the "(1)" and "(2)" they apparently deleted from the introductory paragraph. Doc. 95 at 8–9. There, they also ask the Court to (1) "vacate" Maxum's notice of voluntary dismissal of Fun Zone, Doc. 48; and (2) "vacate" the order dismissing Fun Zone, Doc. 54. Doc. 95 at 8–9. The undersigned presumes Jones and Shaw do not seek that relief in light of the absence of a request for that relief in the introductory paragraph and no clear argument on that relief.

F.2d 834, 836 (5th Cir. 1990) (explaining policy interest of Rule 60 in securing finality of judgments is not implicated where action proceeds against some defendants).

Rather, a court may modify or rescind an interlocutory order, *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000), any time before final judgment is entered, *Bon Air Hotel*, 426 F.2d at 862. Where a court has jurisdiction over an action, the court has the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1225 (11th Cir. 2013) (quoted authority omitted).

The orders Jones and Shaw ask this Court to vacate (those dismissing the claims against the Colemans, Doc. 36, and McNeal, Doc. 49) are interlocutory because parties remain (Jones and Shaw) and this Court did not include in those orders the Rule 54(b) language that there is no just reason for delay. *See* Fed. R. Civ. P. 54(b); *James by James*, 909 F.2d at 836. Because of the interlocutory nature of those orders, Jones and Shaw's continued reliance on Rule 60(b)(3) and (6) is misplaced.[19] Because the orders are interlocutory, this Court has the inherent procedural power to reconsider, rescind, or modify the orders for cause the Court deems sufficient. *See Flintlock*, 710 F.3d at 1225.

Maxum agrees that Jones and Shaw challenge orders that are interlocutory and they therefore rely on the wrong procedural rules. Doc. 101 at 5. Maxum contends reconsideration of an interlocutory order is available only if there is an intervening change in controlling law, new evidence is available, or there is a need to correct clear error or manifest injustice. Doc. 101 at 5–6 (citing *Fla. Coll. of Osteopathic Med. v.*

---

[19]Jones and Shaw appear to have "cut and pasted" the Rule 60(b)(3) and (6) standards from previous versions of the third amended motion for relief and do not address the law on interlocutory orders provided in the order permitting them to file that motion. *Compare* Doc. 56 at 2 (original motion for relief), Doc. 57 at 2 (amended motion for relief with same standard), Doc. 58 at 2 (second amended motion for relief with same standard), *and* Doc. 95 at 2 (third amended motion for relief with same standard).

*Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998) (citing extra-circuit case for observation that courts have recognized those grounds for justifying reconsideration)). While courts are reluctant to reconsider orders absent one of those or similar grounds, the standard is not so limiting. *See Flintlock,* 710 F.3d at 1225.

## IV.   Arguments

### A.   *Jones & Shaw's Arguments*

Jones and Shaw present three arguments. Their first and second arguments concern whether this Court should revisit the stipulations of the other parties (the stipulation of Maxum and the Colemans and the stipulation of Maxum and McNeal) and the resulting orders. Their third argument concerns whether this Court should revisit their stipulation with Maxum, on which no order has entered.

Jones and Shaw's first and second arguments are difficult to follow and therefore presented verbatim:

> **I. THIS COURT SHOULD HOLD THAT SERVICE OF PROCESS AS TO DEFENDANT, FUN ZONE ENTERTAINMENT, LLC WAS INVALID AS IT WAS NOT MADE ON THE REGISTERED AGENT AT THAT TIME**
>
> On July 26, 2018, Plaintiff in this Court filed a Return of Service indicating that Bernard McNeal was served as the registered agent for Fun Zone Entertainment on July 7, 2018 (Docket Entry #23). However, Sunbiz.com provides that the registered agent at the time of service was Pete Pital. (see attached)
>
> There exists no evidence in the record of attempts to serve the proper registered agent. Furthermore, Mr. McNeal unquestionably took the position at the Status Conference of September 10, 2018 that he was not a member or agent of Fun Zone. Service on Fun Zone through McNeal was invalid.
>
> Fed. R. Civ. P. 4(e)(1) directs federal litigants to use the procedural methods of service of process provided by the state in which the district court is located. Therefore, the Return of Service of Process

against Fun Zone was defective such that their presence in this matter was a nullity. Without Fun Zone, however, there was lack of an indispensable party and an absence of a case in controversy.

## II. THIS COURT SHOULD VACATE THE JOINT STIPULATIONS AND ORDERS DISMISSING THE DEFENDANTS, ALLEN COLEMAN, CHING PING COLEMAN AND BERNARD MCNEAL AS IMPROPER

The Joint Stipulations between Defendants, Allen Coleman, Ching Ping Coleman and Bernard Mc[N]eal, each state that "there is and can never be a duty to defend…or indemnify…under the Maxum policy in the underlying styled action." As to the Joint Stipulation for Bernard McNeal, the Stipulation also states, "McNeal makes this stipulation regardless of any amendments that could ever be made to the complaints in the Underlying Actions." The Stipulation goes on to state that "Maxum and McNeal agree that the stipulations set forth herein solely deal with coverage."

Stating that the stipulation is solely based on coverage when it clearly isn't as the prior stipulation is based on a factual determination and factual conclusion.

Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002). As with all contracts, the interpretation of an insurance contract—including determining whether an insurance provision is ambiguous—is a question of law to be determined by the Court. *Id.* at 842. In the instant case, the joint stipulations have essentially taken the matter out of the Courts hands. Most importantly, the Joint Stipulations have taken away the Plaintiffs' [Jones's and Shaw's] right to undergo any type of discovery regarding the creation of the insurance policy as well as the circumstances regarding any changes made to the insurance policy. Therefore, leaving the Plaintiffs [Jones and Shaw] with no legal recourse in the Court system.

Case law is clear that the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims. *Amerisure Ins. Co. v. Auchter Co.*, 2018 U.S. Dist. LEXIS 154949, 29 (M.D. Fla. Mar. 27, 2018) …. The Declaratory Judgment Act allows, in certain circumstances, an insurer or a tortfeasor to have the "question" of indemnification answered prior to resolution of the underlying claim. Here, however, the facts suggest that

that "question" was never asked such that the Insurer sought what are essentially advisory opinions through collusive means.

Fun Zone, the primary insured, has not appeared in this action at all. Without Fun Zone, over whom jurisdiction was a fallacy throughout, the action would have been subject to dismissal at the outset for the Insurance Carrier's failure to join its First Named Insured. Fun Zone has been an Indispensable Party and, had the clearly erroneous service of process been raised, subject to Dismissal by any of the Defendants. However, due to Fun Zone's improper presence from the outset by virtue of the invalid service of process, dismissal of the action on that basis never occurred. The specter of collusiveness runs even further based on the fact that the faulty return of service for Fun Zone was effected upon Mr. McNeal himself. His not refusing service, and then later claiming repeatedly through his attorney not to be a member of the business, justifies discovery into what policy or policies language were part of the policy when the incident occurred.

There has been no trial on the underlying complaints nor has any discovery been conducted in order to ascertain information relating to the insurance policy and the circumstances surrounding the creation of the insurance policy. The absence of the only Named Insured, Fun Zone, from either this case or the state case raises much more in the way of questions than answers.

An insurance company's duty to indemnify an insured party is determined by the underlying facts adduced at trial or developed through discovery during the litigation. *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. 4th DCA 2006). Here, Defendant Maxum has sought to have its duty to indemnify, and to compensate the injured third party beneficiaries, determined by stipulations with parties not named in their Policy. Specifically, this includes the Colemans, owners of the property upon which the subject Arcade operated and Mc Neal [sic], a gentleman who once owned it, may still be the owner of the Arcade but denies such.

A declaration as to the duty to indemnify is generally premature unless there has been a resolution of the underlying claim, but the exception to this general principle is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify. *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). Further, it was against the interest of Bernard McNeal to prematurely enter into an agreement with his insurer to waive a duty to indemnify when there has been no determination of the underlying legal action. This begs the

24

question, who among the Defendants actually sought coverage from Maxum so as to create a case in controversy in the first place? Fun Zone didn't appear[,] and McNeal and the Coleman's don't even claim they were covered[.]

Not only were the Joint Stipulations not signed by all parties who have appeared, but there were parties that have appeared that were represented by counsel in the State Court Action who severely prejudiced themselves in the State Court action without their attorney signing the Joint Stipulation; that individual being Bernard McNeal.

Defendants, Charles Shaw and Terrance Jones, based on the above, have demonstrated grounds to support a claim of misrepresentation to this Court as to the provisions contained within the Joint Stipulations. Specifically, by serving McNeal when Sunbiz makes clear he was not the registered agent, there was a misrepresentation and so too was there one made by McNeal in not refusing service. In order to allow the Defendants a fair opportunity to perform discovery and determine the coverage, this Court would need to vacate the Joint Stipulations.

Doc. 95 at 2–6.

In contrast to their first and second arguments, Jones and Shaw's third argument is straightforward. They argue this Court should "vacate" the stipulation entered into on their behalf by their former counsel with Farah & Farah, contending they were induced by fraud and "proven" improper conduct by counsel.[20] Doc. 95 at 6–8. Each provides a sworn affidavit. Docs. 95-1, 95-2.

In his affidavit, Jones states:

1. I am over the age of eighteen and otherwise competent to make the within Affidavit which is based upon my first-hand knowledge.

2. On July 21, 2017, I was an employee of Fun Zone Entertainment, LLC when two armed gunmen entered.

---

[20]Jones and Shaw loosely claim fraud and misconduct seemingly to try to establish the narrow grounds for vacatur in Rule 60(b)(3), a rule that, as discussed, does not apply.

3. During the above armed robbery on July 21, 2017, I was shot by one of the gunmen during their attempt to flee the scene.

4. When I hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife, Lakasia Jones, was the primary contact for communication but she was not represented by Mr. Huttman.

5. When I hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife and I made it very clear that we were under no circumstances going to agree to dismiss our [sic] remove any party without a trial.

6. Prior to the Joint Stipulation being filed on September 4, 2018, neither myself nor my wife received the joint Stipulation for review.

7. The Joint Stipulation was sent to Michelle Shaw in an email which I never received.

8. After review of the terms in the Joint Stipulation, Michelle Shaw mentioned the Joint Stipulation to me but we agreed that we would not agree to those terms and nothing was sent back to our attorney Mr. Larry Huttman.

9. However, sometime later we noticed that the Joint Stipulation was filed on September 4, 2018 by Mr. Larry Huttman against my wishes and without my consent.

10. At no point in time did I ever nor would I ever consent to such terms as are stated in the Joint Stipulation as the insurance company holds the insurance policy.

Doc. 95-2.

In his affidavit, Shaw states:

1. I am over the age of eighteen and otherwise competent to make the within Affidavit which is based upon my first-hand knowledge.

2. On July 21, 2017, I was an employee of Fun Zone Entertainment, LLC when two armed gunmen entered.

3. During the above armed robbery on July 21,2017, I was shot by one of the gunmen during their attempt to flee the scene.

4. When I hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife, Michelle Shaw, was the primary contact for communication but she was not represented by Mr. Huttman.

5. When I hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife and I made it very clear that we were under no circumstances going to agree to dismiss our [sic] remove any party without a trial.

6. At some point, my wife received a Joint Stipulation in an email from our prior attorney Mr. Huttman. Mr. Huttman informed my wife that the terms would not negatively affect our case and we should look over the Stipulation and agree to everything.

7. Once my wife, Michelle Shaw, saw the terms of the Joint Stipulation, she immediately knew that I would never agree to such terms.

8. Further, and most importantly, my wife, Michelle Shaw, made it very clear to Mr. Larry Huttman that he would need to speak with myself and Mr. Terrance Jones regarding the conditions of the Stipulation as she did not understand what was being requested; however, Mr. Huttman never spoke to either of us about the Stipulation.

9. As such, my wife, Michelle Shaw, never mentioned the Joint Stipulation to me nor sent anything back to our prior attorney Larry Huttman.

10. However, sometime later we noticed that Mr. Larry Huttman filed the Joint Stipulation on September 4, 2018 against my wishes and without my consent.

11. At no point in time did I ever nor would I ever consent to such terms as are stated in the Joint Stipulation as the insurance company holds the insurance policy.

Doc. 95-1.

## B.   *Maxum's Arguments*

Maxum contends Jones and Shaw's first argument is a "total non-starter" because whether service of process on Fun Zone was proper is irrelevant to whether the stipulations should be enforced. Doc. 101 at 7. Maxum argues, "Since the …

27

'service argument' is nothing more than a red herring, it should be ignored entirely." Doc. 101 at 7.

Maxum continues that, even setting aside the "logical and practical impropriety" of the service-of-process argument, rejection of the argument is warranted for three reasons: (1) Jones and Shaw are judicially estopped from arguing improper service on Fun Zone through McNeal because of their earlier successful argument to the contrary in the state actions;[21] (2) McNeal was the proper agent for service on Fun Zone under Florida's statute for serving process on a company, Fla. Stat. § 48.062;[22] and (3) McNeal was the proper agent for service on Fun Zone under

---

[21]Judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Although the circumstances under which the doctrine is properly invoked are "not reducible to any general formulation of principle … [three] factors typically inform the decision whether to apply the doctrine in a particular case": (1) was the party's later position clearly inconsistent with its earlier position; (2) was the party successful in persuading a court to accept its earlier position; and (3) would the party derive an unfair advantage or impose an unfair detriment on the other party if not estopped. *Id.* at 750–51. "Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.

For its judicial estoppel argument, Maxum provides filings from Shaw's state action: the return of service on Fun Zone through McNeal; Fun Zone's motion to quash service of process on the ground that McNeal was neither a registered agent for Fun Zone nor an employee of Pete Pital on the date of service; Shaw's response in opposition in which he asserted service of process on Fun Zone through McNeal was proper; and an order denying the motion to quash. Docs. 101-3–101-5.

[22]Section 48.062 provides:

(1) Process against a limited liability company, domestic or foreign, may be served on the registered agent designated by the limited liability company under chapter 605[.]

(2) If service cannot be made on a registered agent of the limited liability company because of failure to comply with chapter 605 or because the limited liability company does not have a registered agent, or if its registered agent cannot with reasonable diligence be served, process against the limited liability company, domestic or foreign, may be served:

(a) On a member of a member-managed limited liability company;

(b) On a manager of a manager-managed limited liability company[.]

Fla. Stat. § 48.062(1), (2)(a)–(b).

the federal rule for serving process on a company, Fed. R. Civ. P. 4(h)(1)(B).[23] Doc. 101 at 7–10.

Maxum contends Jones and Shaw's second argument is "vague and incomprehensible" and, in any event, Jones and Shaw have no standing to challenge stipulations by other parties. Doc. 101 at 10. Maxum argues, "Defendants' brazen attempt to undo the stipulations between Maxum and other parties is unprecedented; it is unlike anything undersigned has ever seen and is contrary to fundamental principles of process. The motion in this respect should be denied out of hand." Doc. 101 at 10. Maxum continues that, even if Jones and Shaw could "conceivably challenge" the stipulations, their challenge would fail because the stipulations are valid, binding, and enforceable, having been executed by counsel and without fraud, incapacity, or duress. Doc. 101 at 11–14.

Maxum attacks Jones and Shaw's third argument on four fronts. First, Maxum contends the record demonstrates that Jones and Shaw's previous counsel with Farah & Farah possessed clear and unequivocal authority to enter into the stipulation with Maxum. Doc. 101 at 14–18. For that contention, Maxum points to these paragraphs in the sworn affidavits by Jones and Shaw:

> 4. When I [Shaw] hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife, Michelle Shaw, was the primary contact for communication but she was not represented by Mr. Huttman.
>
> 6. At some point, my wife [Michelle Shaw] received a Joint Stipulation in an email from our prior attorney Mr. Huttman. Mr. Huttman

---

[23]Rule 4(h)(1)(B) governs service of process on a corporation, partnership, or association, and allows service of process in the manner for serving an individual or by delivering process to an officer, managing or general agent, or any other agent authorized by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B).

For its proper-service arguments, Maxum provides a summary of attempts to serve Fun Zone, which indicate a process server tried to serve Fun Zone at its address listed in its state registration, care of "Pete Pital" as its registered agent, but was unsuccessful because the premises was vacant and workers of neighboring stores did not know any "Pete Pital." Doc. 101-6.

informed my wife that the terms would not negatively affect our case and we should look over the Stipulation and agree to everything.

8. After review of the terms in the Joint Stipulation, Michelle Shaw mentioned the Joint Stipulation to me [Jones] but we agreed that we would not agree to those terms and nothing was sent back to our attorney Mr. Larry Huttman.

Doc. 101 at 15 (citing Doc. 95-1 ¶¶ 4, 6, and Doc. 95-2 ¶ 8). Maxum includes biographies of Jones and Shaw's previous counsel with Farah & Farah and the Liles Firm showing each has practiced law for more than twenty years. Doc. 101 at 17 (citing Docs. 61-1, 61-2). And Maxum emphasizes the absence of an immediate objection to the stipulation by Jones and Shaw, the absence of evidence that either Jones or Shaw lacks sufficient education to understand the stipulation, the absence of evidence that Jones and Shaw failed to understand the stipulation, the absence of affidavits from counsel with Farah & Farah and the Liles Firm, and the absence of any apparent motive for previous counsel with those firms to enter the stipulation without their clients' knowledge. Doc. 101 at 15–17.

In a footnote, Maxum adds, "To the extent this Court finds that the stipulation between Maxum and Defendants is not enforceable, Maxum will respectfully need additional time to conduct discovery on the matter, including but not limited to the following: (1) deposition of Michelle Shaw; (2) deposition of Charles Shaw; (3) deposition of Terrance Jones; (4) deposition of Larry Huttman [counsel with Farah & Farah]; (5) deposition of Robert George [counsel with the Liles Firm]; and, (6) all manner of document discovery." Doc. 101 at 18 n.8.

Second, Maxum argues Jones's and Shaw's affidavits are "shams." Doc. 101 at 18. Maxum juxtaposes the paragraphs in the affidavits indicating that when Jones and Shaw hired Farah & Farah, they had made it clear to counsel they would not agree to dismiss or remove a party without a trial under any circumstance with the fact that Farah & Farah had filed proposed settlements in the state actions. Doc. 101 at 18 (*comparing* Doc. 95-1 ¶ 5 *and* Doc. 95-2 ¶ 5 *with* Doc. 74-1).

Third, Maxum argues Jones and Shaw are estopped from challenging the stipulation because they received a benefit from it: based on the stipulation, Maxum, in the state actions, withdrew the motions to stay and cancelled the hearings on those motions in the state court. Doc. 101 at 18–19. According to Maxum,

> [I]t is undisputed that Maxum filed motions to intervene and motions to stay, and scheduled a hearing on those motions on 9/4/2018—the same day that the stipulations were finalized. It is also undisputed that consideration for the binding stipulations was Maxum's agreement to withdraw its pending motions and cancel the hearing. As a matter of law, Defendants cannot obtain the benefits of the withdrawn motions and canceled hearing, yet complain that the agreement is unenforceable.

Doc. 101 at 18–19.

Fourth, Maxum argues that if Jones and Shaw are dissatisfied with their previous counsel, their recourse is against their lawyers, not against Maxum or "the integrity of the litigation process." Doc. 101 at 19–20. Maxum argues:

> Defendants freely hired their counsel. Indeed, Defendants freely hired two attorneys, from two separate law firms. Defendants cannot thereafter avoid the consequences of that attorney's acts or omissions. If Defendants take issue with former counsels' conduct, they are not entitled to have settlements arbitrarily set aside or orders vacated by the Court. Rather, Defendants must seek relief, if any, against their former counsel.

Doc. 101 at 20.

## V.    Law & Analysis

### A.    *Actual Controversy*

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Jones and Shaw flag whether this action presents an actual controversy without the presence of the named insured (Fun Zone), but neither side briefs the

issue.[24] *See generally* Docs. 95, 101. Because whether the case still presents an actual controversy concerns this Court's subject-matter jurisdiction, the analysis begins there. *See Penn Am. Ins. Co. v. Valade*, 28 F. App'x 253, 256 (4th Cir. 2002) ("[A]n insurer … maintaining a declaratory judgment action against an injured third party … after default judgment has been entered against the insured … creates the appearance that we may lack subject matter jurisdiction. We must therefore examine whether we possess jurisdiction[.]").

Article III § 2 of the United States Constitution restricts federal jurisdiction to "cases" and "controversies." This restriction imposes the "justiciability" limitations of standing, ripeness, and mootness, and serves to "prevent the judiciary from infringing on the powers of the executive and legislative branches" and to "ensure that the judiciary considers only those matters presented in an adversarial context." *Strickland v. Alexander*, 772 F.3d 876, 882–83 (11th Cir. 2014).

An actual controversy must be present at all stages of review, not just when the complaint is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Whether there is an actual controversy is determined case-by-case. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act's reference to "actual controversy" is to controversies that are justiciable under Article III. *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239–40 (1937). Without an actual

---

[24]Perhaps ironically, the issue of whether there is an actual controversy without the named insured (Fun Zone) arises because of Maxum's attempt to eliminate the separate jurisdictional issue of whether complete diversity exists that had plagued the case earlier. See "Background" above.

controversy, a court may not issue a declaration. *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 734–35 (11th Cir. 2018).

To decide if a declaratory-judgment case presents an actual controversy, a court considers "whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and quoted authority omitted). The dispute must be: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 126 (internal quotation marks, alterations, and quoted authority omitted).

Nearly eighty years ago, in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, the Supreme Court addressed whether there is an actual controversy in a federal declaratory-judgment case by an insurer against an insured and a tort claimant suing the insured in a pending state action. 312 U.S. 270 (1941). There, the tort claimant sued the insured in state court to recover for injuries sustained in an automobile collision, and the insurer sued both the insured and the tort claimant in federal court for relief under the Declaratory Judgment Act. *Id.* at 271. The Court observed there is a "clear" actual controversy between the insurer and the insured. *Id.* at 274. The Court continued there also is an actual controversy between the insurer and the tort claimant because, under applicable state law (Ohio), the tort claimant could proceed against the insurer if he obtained final judgment against the insured. *Id.* The Court concluded that to hold otherwise because the controversy "were yet too remote" would cause the undesirable risk of opposite insurance policy interpretations (one by the federal court in an action between the insurer and insured, and one by the state court in an action between the insurer and the tort claimant). *Id.* at 271–72.

33

In a declaratory-judgment action by an insurer against an insured and a tort claimant, an actual controversy thus exists even without a current judgment for the tort claimant against the insured. *Edwards v. Sharkey*, 747 F.2d 684, 686–87 (11th Cir. 1984); *see also Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (holding district court erred in dismissing declaratory-judgment action by insurer against insured and explaining fact that state court "doors" are closed to insurer unless liability of alleged tortfeasor to insured has been determined does not mean "federal court" doors are automatically closed to insurer), *abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

And in a declaratory-judgment action between an insurer, an insured, and a tort claimant, an actual controversy remains after the insured drops from the case where the tort claimant may collect from the insurer if successful in a pending lawsuit because the tort claimant has a right to protect his potential financial interest in the policy. *See Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189–90 (9th Cir. 2009) (tort claimant has standing to proceed in action against insurer after insured defaulted; tort claimant has independent right to litigate coverage); *Fed. Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 354 & n.6 (3d Cir. 1986) (in declaratory-judgment action, actual controversy remained between insurer and tort claimants after default judgment entered against insured; in reality, real dispute is between insurer and tort claimants, not against insurer and insured); *Hawkeye–Security Ins. Co. v. Schulte,* 302 F.2d 174, 177 (7th Cir. 1962) (where default is entered against insured in declaratory-judgment action, tort claimant has standing to remain and defend action; anomalous to hold that actual controversy exists between insurer and tort claimant but deny tort claimant right to participate in controversy); *Morell v. Star Taxi*, 343 F. App'x 54, 58 (6th Cir. 2009) (tort claimant with state right of action against insurer if judgment against insured is obtained and unpaid has standing in declaratory-judgment action after default against insured); *Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 638 (4th Cir. 2005) (estate of tort claimant has standing to pursue declaratory-judgment action against insurer without regard to whether insured was

party); *Penn Am.*, 28 F. App'x at 257 (injured third party has interest in defining scope of coverage independent of insured's interest; when insurer initiates declaratory-judgment action against insured and injured third party, injured third party acquires standing independent of that of insured to defend itself; default against insured does not negate actual controversy between insurer and injured third party); *Vt. Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1185 (E.D. Va. 1995) (in declaratory-judgment action, actual controversy between insurer and tort claimant remained after default judgment entered against insureds, finding "significant" that, under pertinent state law [Virginia], a tort claimant may bring direct action against insurer when tort claimant has obtained judgment against insured and judgment remains unsatisfied).

Florida's "nonjoinder statute," Fla. Stat. § 627.4136, "specifically allows a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract but who obtains a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy." *Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 560 (Fla. 2014) (internal citations, quotation marks, and alterations omitted). "While the customary procedure followed by [a tort claimant] after recovery of a judgment against the insured is to pursue execution of that judgment by way of proceedings supplementary to execution or by garnishment, [the tort claimant] can file a direct suit against the insurance company."[25] *Williams v. Union Nat'l Ins. Co.*, 528 So. 2d 454, 455 n.1 (Fla. 1st DCA 1988).

Contrary to Jones and Shaw's suggestion, this action presents an actual controversy despite that there is no current judgment against the named insured (Fun Zone) and the named insured has been dismissed from this action. Jones and

---

[25]Florida Statute § 56.29, which governs proceedings supplementary, allows a judgment creditor to bring into an action anyone possessing non-exempt property that may be used to satisfy the judgment.

Shaw are actively suing Fun Zone in state court based on the internet-café shooting, and, if they ultimately succeed, Florida law allows them to attempt to obtain recovery from Maxum. Under *Maryland Casualty* and its progeny, the declaratory-judgment claims are sufficiently ripe to present an actual controversy sufficient for jurisdiction.

Whether this Court *should* issue declaratory relief is another matter, discussed at the end of this report and recommendation. *See Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680–81 (7th Cir. 1992) (observing pendency of state action by tort claimant against insured goes not to whether there is an actual controversy but to whether federal court should in its discretion grant or deny declaratory relief).

### B.   *Arguments*

1.   *Stipulation of Maxum and Colemans, Stipulation of Maxum and McNeal, and Resulting Dismissal Orders*

Excepting Jones and Shaw's fleeting contentions that there is no actual controversy and that Fun Zone is an indispensable party, outright rejection of Jones and Shaw's first and second arguments is warranted. Based on Jones and Shaw's reference to asserted "advisory opinions," their observation that not all parties who have appeared signed the stipulations, and their contention that the stipulations have denied their right to discovery, their arguments appear to be based on a fundamental misunderstanding of the import of the stipulations and resulting orders dismissing the claims against the Colemans and McNeal.[26]

---

[26]Jones and Shaw's first argument concerns service of process on Fun Zone. Doc. 95 at 3–6. The defenses of insufficient process and insufficient service of process belong to Fun Zone—not Jones and Shaw—and Fun Zone would have had to assert those defenses in response to the complaint. In the interest of judicial economy, the Court need not address Maxum's arguments that Jones and Shaw are judicially estopped from challenging service of process on Fun Zone and that service of process was proper under both state and federal law. *See* Doc. 101 at 7–10. The posture of the case is the same regardless of whether service of process on Fun Zone was proper because Maxum voluntarily dismissed Fun Zone from the case, Docs. 44, 49.

Stipulations bind only the parties who sign them. *See Bank of NY v. Yugoimport*, No. 03 Civ. 9055 (SCH), 2004 WL 1145836, at *2 (S.D.N.Y. May 21, 2004) (unpublished) ("A stipulation intended to be binding upon all parties to a multi-party litigation must be signed by all parties. That proposition would appear to be self-evident.").

Through the stipulations, the Colemans and McNeal waived their rights to litigate the issues raised by Maxum in exchange for dismissal of the declaratory-judgment claims against them. In entering the orders, this Court made no declaration, no decree, and no other determination binding on Jones and Shaw about the merits of Maxum's claims—whether about the contours of policy coverage or about the applicability of any policy exclusion. Rather, the orders simply dismissed Maxum's claims against those defendants based on their agreements with Maxum. Even if this Court were to vacate the orders dismissing the claims against the Colemans and McNeal, the agreements between those parties remain, as Jones and Shaw provide no pertinent authority or coherent argument to support that they may interfere with agreements of others or force others to take different positions in the litigation.

Because Jones and Shaw provide no authority for the relief requested (and the undersigned can find none), the undersigned recommends declining to strike the stipulation of Maxum and the Colemans, Doc. 34, and the stipulation of Maxum and McNeal, Doc. 39, and declining to vacate the resulting orders dismissing the claims against them, Docs. 36, 49.

2.    *The Stipulation of Maxum, Jones, and Shaw*

Jones and Shaw's request for relief concerning their own stipulation with Maxum fares better, considering Jones's and Shaw's presentation of affidavits and Maxum's failure to present like evidence to create a material issue of fact despite that it has the burden of proof.

Although not titled a "settlement agreement" and not signed by Jones or Shaw,[27] the stipulation is in the ilk of a settlement agreement and, in accordance with the parties' briefing, will be treated as such.[28]

---

[27]Parties customarily execute settlement agreements, though under Florida law, execution is unnecessary for enforcement. *Williams v. P.F. Chang's China Bistro, Inc.*, No. 16-CV-60906, 2016 WL 4366481, at *5 (S.D. Fla. Aug. 16, 2016) (unpublished) (citing *Patrick v. Christian Radio*, 745 So. 2d 578 (Fla. 5th DCA 1999), and *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1993)).

[28]The stipulation does not neatly qualify as a pretrial stipulation, a voluntary dismissal, or a consent judgment but shares characteristics of all of those types of dispute-resolution documents. The record does not indicate why this approach was chosen.

Rule 16(c) addresses pretrial stipulations. The rule requires a represented party to authorize his attorney to make stipulations about matters likely to be discussed at the pretrial conference and authorizes a court to consider and take action to obtain stipulations to avoid unnecessary proof of facts and documents. Fed. R. Civ. P. 16(c)(1); *United States v. One 1978 Bell Jet Ranger Helicopter, Serial No. 2464, License No. N500RF*, 707 F.2d 461, 462–63 (11th Cir. 1983). Stipulations frame the issues for trial. *G.I.C. Corp., Inc. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997).

Rule 41(a)(1) addresses voluntary dismissals, explaining "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(i) & (ii). The rule gives a plaintiff an "unconditional right" to dismiss an action by notice and without a court order any time before the defendant's service of an answer or motion for summary judgment. *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990). Although the rule speaks in terms of "actions," not "claims," the rule "allows a plaintiff to dismiss all of his claims against a particular defendant." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004); *accord Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973).

Although a settlement usually results in the voluntary dismissal of a case, parties sometimes stipulate to the entry of a consent judgment, defined as any judgment "entered by consent or stipulation of the parties to an action." Abraham C. Freeman, *A Treatise of the Law of Judgments* 2764 (5th ed. 1925). A consent judgment "bear[s] some of the earmarks of judgments entered after litigation." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). But "because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Id.* "[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Id.* at 522. A court cannot enter a consent judgment to which a party has not consented. *Id.*

The stipulation is not a Rule 16(c) pretrial stipulation. Through it, the attorneys seek not to frame the issues for trial but to completely resolve the declaratory-judgment claims against Jones and Shaw. *See generally* Doc. 40. The stipulation is not a Rule 41(a)(1)(A)

If a party refuses to comply with a settlement agreement before dismissal of a case, the court may enforce it, *Kent v. Baker*, 815 F.2d 1395, 1398–1400 (11th Cir. 1987), and, to conserve judicial resources, will enforce it wherever possible, *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994); *Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009).[29] Deciding whether to enforce a settlement agreement must be done "without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

"In the Eleventh Circuit, state law governs the scope of an attorney's authority to enter into a settlement agreement."[30] *Murchison*, 13 F.3d at 1485. Because counsel entered into the stipulations in Florida and this action is in Florida, Florida law applies. Neither side contends otherwise. *See generally* Docs. 95, 101.

Florida law provides clear rules on an attorney's authority to settle a claim for a client. *See Ponce v. U–Haul Co. of Fla.*, 979 So. 2d 380, 382 (Fla. 4th DCA 2008) (setting forth rules); *Collado v. Pavlow*, 951 So. 2d 69, 71 (Fla. 5th DCA 2007) (same); *Sharick v. Se. Univ. of Health Sciences, Inc.*, 891 So. 2d 562, 565 (Fla. 3d DCA 2004)

---

stipulation of dismissal. The stipulation expressly states nothing in it should be construed as a voluntary dismissal of the action by Maxum or a request to administratively close the case. *See* Doc. 40 at 3. And the stipulation is not a request for the entry of consent judgment. In the stipulation, the parties do not request that specific relief. *See generally* Doc. 40.

[29]A district court's authority to enforce a settlement agreement derives from its inherent power and role as supervisor of the litigation. *Swisher Int'l, Inc. v. Encore Vapor, Inc.*, No. 3:16-CV-437-J-32PDB, 2018 WL 707421, at *1 (M.D. Fla. Feb. 5, 2018) (unpublished).

[30]State law also governs the construction of settlement agreements. *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). Under Florida law, settlement agreements are interpreted and governed by contract law. *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992). Absent a contractual provision specifying the governing law, a contract other than for performing services is governed by the law of the state in which the contract was made. *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 n.3 (Fla. 2002). Here, that is Florida. *See* Docs. 34, 39, 40. A contract is created by an offer, acceptance, consideration, and specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Not pertinent to enforceability is whether a party had read the contract before signing it. *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347–48 (Fla. 1977).

(same); *Sosnick v. McManus*, 815 So. 2d 759, 762–63 (Fla. 4th DCA 2002) (same); *Nehleber v. Anzalone*, 345 So. 2d 822, 822–23 (Fla. 4th DCA 1977) (same).

A client may give his attorney authority to compromise or settle his claim, but the authority must be "clear and unequivocal." *Nehleber*, 345 So. 2d at 823. That authority may not be gleaned from the client's mere employment of the attorney,[31] from a contract giving the attorney the right to negotiate a settlement, or even from the attorney's good-faith belief he has settlement authority. *Ponce*, 979 So. 2d at 382. An "unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client." *Nehleber*, 345 So. 2d at 822–23.

The party seeking to enforce a settlement agreement has the burden of establishing the attorney for the opposing party had possessed clear and unequivocal authority.[32] *Weitzman v. Bergman*, 555 So. 2d 448, 449–50 (Fla. 4th DCA 1990); *accord Nehleber*, 345 So. 2d at 822–23 ("A party seeking judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party.").

The standard is "very high." *St. Mary's Sch. of Med. Ltd. v. Zabaleta*, 252 So. 3d 371, 372 (Fla. 3d DCA 2018). A finding that an attorney had possessed clear and unequivocal authority "must be supported by competent, substantial evidence." *Id.* In this regard, Florida courts are "very stringent." *Weitzman*, 555 So. 2d at 449; *see,*

---

[31]An "exception" to the general rule applies where an attorney is confronted with an "emergency" requiring "prompt action to protect his client's interest and consultation with the client is impossible." *Nehleber*, 345 So. 2d at 823; *accord Johnson v. Skarvan*, 992 So. 2d 873, 875 (Fla. 5th DCA 2008). Here, neither side contends this exception applies. *See generally* Docs. 95, 101.

[32]This Court has "expressed a healthy degree of skepticism" about the burden under Florida law, observing that, under other states' laws, the party arguing he gave his attorney no authority has the burden as "the party most likely to possess the affirmative evidence required to demonstrate as much." *Swisher*, 2018 WL 707421, at *5–6 (quoted). "[N]otwithstanding the Court's doubts about the wisdom of the current Florida law on this subject, the Court must follow it." *Id.*

*e.g., Architectural Network, Inc. v. Gulf Bay Land Holdings II, Ltd.*, 989 So. 2d 662, 663 (Fla. 2d DCA 2008) (insufficient: attorneys' testimony they had received communications from opposing attorney that he was authorized to settle); *Carroll v. Carroll*, 532 So. 2d 1109, 1109–10 (Fla. 4th DCA 1988) (insufficient: husband's proffer that settlement had been reached based on letter from his attorney to wife's attorney confirming terms of purported agreement); *Vantage Broad. Co. v. WINT Radio, Inc.*, 476 So. 2d 796, 797–98 (Fla. 1st DCA 1985) (insufficient: counsel's stipulation with opposing counsel on amount due, absence of client objection when amount discussed, and absence of client instruction to not stipulate).

"[W]here there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an evidentiary hearing." *Murchison*, 13 F.3d at 1486; *accord McFadden v. All. Med. Practices, Inc.*, 931 So. 2d 225, 226 (Fla. 1st DCA 2006).

Here, through the third amended motion for relief, Jones and Shaw ask this Court to decline to enforce their stipulation with Maxum, and, through the response and within its earlier notice of dismissal of the "action" against Fun Zone, Maxum asks this Court to enforce the stipulation. *See* Docs. 44, 95, 101.

Maxum concedes it has the burden of establishing that previous counsel for Jones and Shaw possessed clear and unequivocal authority to stipulate. *See* Doc. 101 at 14–15. But Maxum provides no affirmative evidence of such authority,[33] whether

---

[33]Maxum organizes its argument using "factors" introduced by this Court in *BP Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1134–35 (M.D. Fla. 2007), *as amended* (Jan. 3, 2007): "1) whether the client knew his lawyer was in the process of negotiating a settlement; 2) whether and how many times the client met or spoke with his attorney while settlement negotiations were ongoing; 3) whether the client was present in the courtroom when the settlement was announced in open court; 4) whether the client immediately objected to the settlement; and 5) whether the client was an educated man who could understand the terms of the settlement agreement." For those factors, this Court cited an Eleventh Circuit case that considered the circumstances of the case before it without articulating any factors. *See BP Prod.*, 469 F. Supp. 2d at 1134–35 (*citing Murchison*, 13 F.3d at 1485–86). Florida courts do not appear to employ the same factors, and while the factors

from previous counsel or otherwise.[34] In contrast, Jones and Shaw present affirmative evidence—their affidavits—that they never gave their previous counsel authority to stipulate. *See* Docs. 95-1, 95-2.

What Maxum offers falls short of the "competent, substantial evidence" necessary to satisfy the "very high standard" set by Florida courts. *See St. Mary's*, 252 So. 3d at 372 (quoted). And, considering Jones's and Shaw's affidavits, what Maxum offers fails to create a disputed issue of material fact that would warrant an evidentiary hearing (something Maxum has not even requested). *See Linardos v. Lilley*, 590 So. 2d 1064, 1064 (Fla. 4th DCA 1991) ("While there was conflicting evidence that appellee's attorney may have agreed to a settlement, no one testified that appellants had given their attorney authority to settle the case, and appellant … specifically testified that he had not conveyed authority.").

The email exchange between Maxum's counsel and Jones and Shaw's counsel does not indicate whether Jones and Shaw authorized the stipulation; the attorneys do not discuss client authorization, and Jones and Shaw's counsel does not define "we."[35] *See generally* Docs. 91-3–91-11.

---

may be helpful in some cases, they do not appear helpful here, where the stipulation was not announced at the end of a mediation conference or in open court.

[34]Under Florida law, when a party raises a claim that will necessarily require proof by way of a privileged conversation, the attorney-client privilege is waived. *Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1060 (Fla. 1st DCA 2015). Thus, a client waives the privilege when he argues he had not authorized his attorney to settle. *Id.* at 1062; *Hamilton v. Hamilton Steel Corp.*, 409 So. 2d 1111, 1114 (Fla. 4th DCA 1982); *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 642–43 (S.D. Fla. 2007).

[35]Some aspects of the email exchange *arguably* support that Jones and Shaw had not authorized their counsel to stipulate: the short turnaround between presentation of the final revised version by Maxum's counsel and final approval by Jones and Shaw's counsel (fourteen minutes) and the email in which Maxum's counsel directed Jones and Shaw's counsel, "Larry, attached is a draft stipulation of no coverage and dropping parties. Please review it (**or have your clients review it**) and get back to me whether **you** approve." Doc. 91-4 at 1 (quoted; emphasis added); Doc. 91-11 at 1.

Maxum instead highlights statements Jones and Shaw made in the affidavits, but those statements establish only that Jones and Shaw had communicated with their previous counsel about the stipulation either directly or through Shaw's wife, not that anyone had agreed to the stipulation. *See* Doc. 101 at 15 (citing Doc. 95-1 ¶ 4 ("When I hired our prior attorney, Larry Huttman from Farrah & Farrah [sic], my wife, Michelle Shaw, was the primary contact for communication but she was not represented by Mr. Huttman."), Doc. 95-1 ¶ 6 ("At some point, my wife received a Joint Stipulation in an email from … Mr. Huttman. Mr. Huttman informed my wife that the terms would not negatively affect our case and we should look over the Stipulation and agree to everything."), and Doc. 95-2 ¶ 8 ("After review of the terms in the Joint Stipulation, Michelle Shaw mentioned the Joint Stipulation to me but we agreed that we would not agree to those terms and nothing was sent back to … Mr. … Huttman.")).

Maxum emphasizes the decades of experience of Jones and Shaw's previous counsel and that there were two of them (counsel with Farah & Farah and counsel with the Liles Firm). *See* Doc. 101 at 17; *see also* Doc. 61-1 (biography of counsel with Farah & Farah); Doc. 61-2 (biography of counsel with the Liles Firm). As an initial matter, the emails Maxum provides show Maxum's counsel communicated only with counsel with Farah & Farah about the stipulation. *See generally* Docs. 91-1–91-11. Counsel with the Liles Firm is copied on only two emails—an email from counsel with Farah & Farah to Maxum's counsel expressing an interest in discussing a stipulation, Doc. 91-1 at 1, and an email sent after counsel with Farah & Farah emailed Maxum's counsel, "Yes the revised stipulation is ok. Please file it and copy [counsel with the Liles Firm] as well." *See* Doc. 91-11 at 1 (quoted). Regardless, that the previous lawyers have significant experience does not mean they had clear and unequivocal authority to stipulate.

Maxum points to the time that passed between the stipulation and the withdrawal of Jones and Shaw's previous counsel, likening the circumstances here to

the circumstances where the material terms of a settlement are pronounced in open court and in the client's presence and the client stays silent. *See* Doc. 101 at 15–16. In contrast to the circumstances in those cases, Maxum's counsel filed the stipulation on the record after email exchanges with Jones and Shaw's previous counsel, and just twenty-four days later, Jones and Shaw's previous counsel moved to withdraw and asked this Court to hold off on acting on Maxum's request for dismissal based on the stipulation to give Jones and Shaw an opportunity to "retain new counsel or make their positions known regarding this matter." Doc. 45; *see* Doc. 40 (stipulation entered September 4, 2018), Doc. 45 (motion to withdraw filed September 28, 2018). Those circumstances do not suggest clear and unequivocal authority granted and then, with regret festering with time, withdrawn.

Maxum observes there is no evidence to suggest Jones or Shaw did not understand the stipulation. Doc. 101 at 16. That observation is irrelevant. Whether they understood the stipulation and its consequences speaks to their capacity to assent to the agreement (a point not disputed here), not to whether they provided counsel clear and unequivocal authority to stipulate.

Maxum observes that the previous lawyers had no apparent reason or personal motivation to stipulate without their clients' clear and unequivocal authority. Doc. 101 at 17. Given the professional standards governing lawyers, the absence of an apparent reason or personal motivation to stipulate without a client's clear and unequivocal authority is presumed. Regardless, the focus of the inquiry is not on counsel's reason or personal motivation but on his client's thought processes and expectations. *See Jorgensen v. Grand Union Co.*, 490 So. 2d 214, 215 (Fla. 4th DCA 1986) ("[L]awyers and judges, by focusing on our verbiage and customs, can isolate ourselves from the frames of reference, language, thought processes and expectations of clients[.]").

Maxum's request in a footnote for additional time to conduct substantial collateral discovery (depositions of Jones, Shaw, their wives, counsel with Farah &

Farah, and counsel with the Liles Firm and "all manner of document discovery") should not be construed as a motion because Maxum presents the request in a response and violates Local Rule 3.01(g). *See* Doc. 79 (previous denial of Maxum's sanction request as improperly presented in response to motion and for violating Local Rule 3.01(g)). Moreover, the request comes too late. Maxum could have requested discovery or more time to obtain discovery before responding to the third amended motion for relief. Instead, Maxum responded without affidavits, declarations, or deposition testimony in the face of Jones's and Shaw's affidavits.

Maxum contends Jones's and Shaw's affidavits are "shams." Doc. 101 at 18. An affidavit may be disregarded as a sham, but only if a "party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact" and the party later tries to "create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (internal quotation marks, internal modifications, and quoted authority omitted). Under that standard, Jones's and Shaw's affidavits are not shams. Jones and Shaw state that when they hired counsel with Farah & Farah, they had made it "very clear" to him they would not dismiss a party without a trial under any circumstances. *See* Doc. 95-1 ¶ 5; Doc. 95-2 ¶ 4. That they later proposed settlements for compensation in the state actions, Doc. 74-1, does not clearly contradict what they conveyed to counsel about dismissals upon his hiring.

Maxum contends Jones and Shaw are estopped from challenging the stipulation because they received a benefit from the stipulation in the form of Maxum's withdrawal of its motions to intervene and stay and notices of hearings on the motions in the state actions. Doc. 101 at 18–19.

Where a "party has relied to its irreparable detriment on the representations of the opposing attorney," a court may apply "principles of equity" to enforce the compromise or settlement despite the absence of clear and unequivocal authority to

compromise or settle. *Dixie Operating Co. v. Exxon Co., U.S.A.*, 493 So. 2d 61, 63–64 (Fla. 1st DCA 1986).

Here, equity does not dictate enforcing the stipulation. The state court had not ruled on the motions to intervene and stay when Maxum withdrew them, how the state court would have ruled is speculative, nothing precluded Maxum from refiling the motions and hearing notices when the issue of authority arose, and nothing precludes Maxum from refiling the motions and hearing notices now. These circumstances are unlike the circumstances in the cases on which Maxum relies, none of which involved a question of counsel's authority to enter into an agreement, and all of which involved receipt of a tangible and valuable benefit by the estopped party. *See* Doc. 101 at 18 (citing *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 861 n.18 (S.D. Fla. 2005) (rejecting argument that stipulation violates Bankruptcy Code and noting appellant's retention of money provided as result of stipulation estops appellant from attacking stipulation), *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 226 F. Supp. 2d 1326, 1333 (M.D. Fla. 2002) (plaintiffs could not retain benefit of designating person as former director or officer and later avoid implications of designation), *In re Sav-A-Stop*, 124 B.R. 356, 360 (M.D. Fla. 1991) (in competitor dispute, company estopped from denying it owed money under settlement agreement assertedly unenforceable as unspecific where, under agreement, other side timely provided company complete customer and employee lists and took other actions for company's benefit and to its tangible detriment, including its payment of expenses), and *Billings v. City of Orlando*, 287 So. 2d 316, 318 (Fla. 1973) (policemen and their families who accepted disability and pension benefits could not later reject portions of contracts displeasing to them)).

Maxum provides no pertinent authority for its argument that if Jones and Shaw are dissatisfied with their previous lawyers, their recourse is against them, not against Maxum or "the integrity of the litigation process." Doc. 101 at 19–20. While a client may be bound by his counsel's actions in other contexts, federal law mandates

consideration of state law on counsel's authority to enter into a settlement agreement, *see Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1120 (11th Cir. 1991), and Florida law requires for enforcement "competent, substantial evidence" of a "clear and unequivocal" grant of authority, *St. Mary's*, 252 So. 3d at 372, which is lacking here.

Because Maxum fails to satisfy its burden of providing competent, sufficient evidence to show Jones and Shaw's previous counsel possessed clear and unequivocal authority to stipulate, and because Maxum fails in the face of Jones's and Shaw's affidavits to provide sufficient evidence to create a material issue of fact warranting an evidentiary hearing, the undersigned recommends declining to enforce the stipulation between them and Maxum and denying Maxum's belated and improperly made request for discovery.[36]

---

[36]The recommendation would be the same even if the stipulation was deemed more like a pretrial stipulation or a Rule 42 dismissal.

Parties generally are bound by pretrial stipulations. *G.I.C. Corp., Inc.*, 121 F.3d at 1450. But a party may be relieved of a pretrial stipulation. *Equitable Life Assurance Soc'y of U.S. v. MacGill*, 551 F.2d 978, 984 (5th Cir. 1977). When deciding whether to hold a party to its stipulation, a court has "broad discretion." *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987). If the stipulation concerns a matter of law, a court can just ignore it. *One 1978 Bell Jet Ranger Helicopter*, 707 F.2d at 462. If the stipulation concerns a matter of fact, a court need not adhere to it if doing so will cause "manifest injustice." *Cent. Distribs., Inc. v. M.E.T., Inc.*, 403 F.2d 943, 946 (5th Cir. 1968). Manifest injustice may result where counsel enters into a stipulation that essentially settles the case without his client's consent. *United States v. Texas*, 680 F.2d 356, 370–71 (5th Cir. 1982).

A Rule 41 dismissal of all claims against all parties may be revisited under Rule 60(b). *Yesh Music v. Lakewood Church*, 727 F.3d 356, 361–63 (5th Cir. 2013); 8 *Moore's Federal Practice-Civil* § 41.34[6][g] (2017). That counsel had no authority to consent to dismissal may be a ground for relief. *Bradford Exch. v. Trein's Exch.*, 600 F.2d 99, 102 (7th Cir. 1979). If a party seeks relief on the basis that he had not authorized counsel to stipulate to dismissal, the court looks to state law to evaluate counsel's authority. *Finney v. AFLAC Fed. Credit Union*, No. 4:10-CV-99-CDL, 2011 WL 5573905, at *1 (M.D. Ga. Nov. 16, 2011) (unpublished) (citing *Jackson v. Con-Way Transp. Servs.*, 222 F. App'x 887, 890-91 (11th Cir. 2007)).

Here, the recommendation would be the same because the standards for declining to enforce a settlement agreement, declining to enforce a pretrial stipulation, and providing relief under Rule 60(b) overlap where counsel's authority is concerned. This is true even if the burden is on Jones and Shaw, as they satisfied that burden with their affidavits.

## C.    *Discretion to Exercise Jurisdiction*

Should these recommendations be followed—declining to strike the stipulations involving McNeal and the Colemans, declining to vacate the resulting orders, and declining to enforce the stipulation involving Jones and Shaw—this action will be by the insurer (Maxum) against the tort claimants (Jones and Shaw) for declaratory judgment concerning the policy of the named insured (Fun Zone) who is not in this action, whose membership and citizenship has not been determined, and against whom Jones and Shaw have no current judgment. This posture raises the issue of whether the case should proceed.

While "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2013) (internal quotation marks and quoted authority omitted), this is not so in the declaratory-judgment context. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. "On its face, the [Act] provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration.'" *Id.* (quoting 28 U.S.C. § 2201(a)). Through the Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288.

Thus, district courts "possess discretion in determining whether and when to entertain an action under the … Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites," *id.* at 282, with "the normal principle that federal courts should adjudicate claims within their jurisdiction" yielding to "considerations of practicality and wise judicial administration," *id.* at 288. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action

seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.*

"When all is said and done ... the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287 (quoted authority omitted); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251 (11th Cir. 2019) ("Overturning a district court's denial of declaratory relief … requires a heavy lift. Not only do we review this matter only for abuse of discretion, but the district court's initial decision has an explicitly wide range of discretion.").

"In the exercise of their sound discretion to entertain declaratory judgment actions the district courts may not decline to provide declaratory relief on the basis of whim or personal disinclination; but they may take into consideration the speculativeness of the situation before them and the adequacy of the record for the determination they are called upon to make, as well as other factors[.]" *Angora Enters., Inc. v. Condo. Ass'n of Lakeside Vill., Inc.*, 796 F.2d 384, 387 (11th Cir. 1986) (internal quotation marks, emphasis, and quoted authority omitted); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (describing nine non-exhaustive factors to consider "in balancing state and federal interests" where a state action is pending).

The Supreme Court has observed in dictum that courts may "refuse declaratory relief for nonjoinder of interested parties who are not, technically speaking, indispensable."[37] *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967),

---

[37]Rule 19 governs mandatory joinder of a party, *Molinos Valle Del Cibao, C por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011), including in a declaratory-judgment action, *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 294 (10th Cir. 1975) (citing 6A Moore, *Federal Practice & Procedure* § 57.25 (1974)).

Under Rule 19(a)—the necessary-party provision—a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be

*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). In making this statement, the Supreme Court cited *Samuel Goldwyn, Inc. v. United*

---

joined as a party" if, "in that person's absence, the court cannot accord complete relief among existing parties," or if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence" may "as a practical matter impair or impede the person's ability to protect the interest" or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

In *Provident Tradesmens Bank & Trust Co. v. Patterson*—an action seeking a declaration concerning insurance-policy coverage—the Supreme Court assumed the insured "falls within the category of persons" who should be joined under Rule 19(a). 390 U.S. 102, 108 (1968). The Court explained the insured, faced with the possibility of judgments against him, has an interest in having the "fund" preserved to cover potential liability, and there is at least a possibility that a judgment in the declaratory-judgment action might impede his ability to protect his interest or lead to later re-litigation by him. *Id.*

If someone meets the description in Rule 19(a) but cannot be made a party, the court must determine under Rule 19(b)—the indispensable-party provision—whether, "in equity and good conscience," the action "should proceed among the existing parties or should be dismissed." Rule 19(b) lists non-exclusive considerations. *Molinos*, 633 F.3d at 1344. Rule 19(b) requires a "pragmatic" analysis leading to "practical and creative justice," not an analysis wrapped up in "formulas." *Provident Tradesmens Bank*, 390 U.S. at 119 n.16.

"A party does not waive the defense of failure to join an indispensable party by neglecting to raise it; an objection can be raised at any time even by a reviewing court on its own motion[.]" *Kimball v. Florida Bar*, 537 F.2d 1305, 1307 (5th Cir. 1976); *accord* 7 Mary Kay Kane, 5B *Federal Practice & Procedure (Wright & Miller)* § 1609 (3d ed.). "[T]he possible effects of a judgment on an absent person do not deprive a federal court of jurisdiction; rather, the court must consider the joinder issue under the practical and equitable standards of Rule 19(a) and (b)." *Cas. Indem. Exch. v. Vill. of Crete*, 731 F.2d 457, 461 (7th Cir. 1984). "In the absence of an indispensable party, the federal courts are no more empowered to render a declaratory judgment than … to give affirmative relief." *Kimball*, 537 F.2d at 1307.

Whether a person or entity is indispensable "can only be determined in the context of particular litigation." *Provident Tradesmens Bank*, 390 U.S. at 118. "The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases[.]" *Id.* at 118–19. Decisions on whether an insured is indispensable in a declaratory-judgment action thus "have not been uniform," with variances dependent on the facts. David A. Johns, *Insured as Indispensable or Necessary Party in Federal Court Action Between His Liability Insurer and Actual or Potential Tort-Claimants*, 8 A.L.R. Fed. 738 (originally published in 1971; currently updated weekly); *accord* 7 Mary Kay Kane, *Federal Practice & Procedure (Wright & Miller)* § 1619 (3d ed.). Decisions on whether a tort claimant is indispensable in a declaratory-judgment action by an insurer generally hold yes based on considerations common to those types of cases. *See, e.g., Ranger Ins. Co. v. United Hous. of New Mexico, Inc.*, 488 F.2d 682, 684 (5th Cir.1974); *Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005).

*Artists Corp.*, 113 F.2d 703 (3d Cir. 1940), in which the Third Circuit explained, "The criteria must always be whether a declaratory judgment will clarify and settle the legal relations in issue and whether such declaration will afford relief from the uncertainty and controversy giving rise to the proceeding." *Samuel Goldwyn*, 113 F.3d at 709.

Elsewhere, the Eleventh Circuit has recognized "prudential limitations on the kinds of cases that a court has power to decide." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379 (11th Cir. 2019). "Those prudential concerns counsel judicial restraint and prevent courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."[38] *Id.* at 1379–80 (internal quotation marks and quoted authority omitted). "Based on these interests, courts decide only cases that are ripe for their review," considering, case-by-case, "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."[39] *Id.* (internal quotation marks and quoted authority omitted); *see, e.g., American Fidelity & Casualty Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (affirming decision to decline to exercise jurisdiction over a declaratory-judgment action filed by insurer involving apportionment among

---

[38]Outside the declaratory-judgment context, the Supreme Court has called into question jurisprudence distinguishing between constitutional ripeness and prudential ripeness, explaining that the suggestion that a claim is nonjusticiable on prudential grounds rather than constitutional grounds "is in some tension" with the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).

[39]On fitness, courts ask whether the parties raise issues that can be decided "without further factual development and whether the institutional interests of the court and agency favor immediate review." *Club Madonna*, 924 F.3d at 1380. On hardship, litigants must show they are forced between foregoing lawful activity and risking substantial legal sanctions. *Id.* "If a claim is fit for judicial decision, that is end of the inquiry, and the matter is ripe, given that the absence of a hardship cannot tip the balance against judicial review[.]" *Id.* (internal quotation marks and quoted authority omitted). Even if an action is "unripe" at its inception, later events can make it ripe for review. *Yacht Club Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 878 (11th Cir. 2015); *Yacht Club Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 922–23 (11th Cir. 2013).

insurers and stating court should not judge questions that "may readily be imagined, but may never in fact come to pass"); *Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) (elaborating that *American Fidelity* held "no action for declaratory relief will lie" to establish insurer's liability "until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"); *Edwards*, 747 F.2d at 686 (explaining *American Fidelity* "cautioned" against exercise of jurisdiction over declaratory-judgment action where question of apportionment of insurance coverage may never arise due to lack of judgment establishing liability of insured); *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 775 n.10 (11th Cir. 2011) (explaining that *Edwards* distinguished *American Fidelity*).

Under Florida law, to determine if an insurer must indemnify an insured for damages from a legal action, a court considers the insurance contract and the actual facts, which often develop during discovery or trial in that legal action. *Alicea Enters., Inc. v. Nationwide Ins. Co. of Am., Inc.*, 252 So. 3d 799, 802 (Fla. 4th DCA 2018).

Here, should the recommendations be followed, the undersigned further recommends ordering Maxum to show cause why this Court should not dismiss this action without prejudice or continue the stay considering that Maxum is not providing a defense to any party in the state actions, that Fun Zone may be a necessary or indispensable party in this action, prudential ripeness concerns, and any other pertinent factors. *Compare Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 769–70 (11th Cir. 2019) (affirming dismissal of declaratory-judgment action by insurer against insured based on ripeness concerns where insurer sought declaration it had no duty to indemnify insured in pending state action; before deciding insurer's motion for summary judgment, district court ordered insurer to show cause why its duty to indemnify was ripe considering that state action was pending and insured's liability was not established), *and Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC*, No. 1:19-198-

KD-N, 2019 WL 4131107, at \*9–10 (S.D. Ala. Aug. 29, 2019) (unpublished) (recommending staying claim for declaratory relief on insurer's duty to indemnify based on prudential ripeness concerns because tortfeasor's state action against insured remained pending), *adopted*, 2019 WL 4725160, at \*1 (S.D. Ala. Sept. 26, 2019) (unpublished), *with First Mercury Ins. Co. v. Excellent Computing Distrs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016) (reversing order dismissing insurer's declaratory-judgment action based on pendency of tort claimant's state action because district court failed to provide sufficient reasoning to enable meaningful review on what facts had to be determined in state action and relied primarily on possibility that insured's liability to tort claimant would never arise without considering "potential that an insurance coverage determination could serve a useful purpose in clarifying the legal relations at issue"), *and Holbrook*, 867 F.2d at 1333 (holding district court erred in dismissing declaratory-judgment action by insurer against insured; "mere fact" that state action is pending does not mean federal declaratory-judgment action cannot proceed), *abrogated on other grounds*, *Wilton*, 515 U.S. at 277.

## VI.   Recommendations[40]

The undersigned recommends:

(1)   **denying in part** Jones and Shaw's third amended motion for relief, Doc. 95, to the extent they seek vacatur of the stipulation of Maxum and the Colemans, the stipulation of Maxum and McNeal, and the resulting orders dismissing the claims against the Colemans and McNeal;

---

[40]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

(2)    **granting in part** Jones and Shaw's third amended motion for relief, Doc. 95, to the extent they ask this Court to decline to enforce the stipulation of Maxum, Jones, and Shaw, Doc. 95;

(3)    **ordering** Maxum to show cause why this Court should not dismiss this action without prejudice or continue the stay considering that considering that Maxum is not providing a defense to any party in the state actions, that Fun Zone may be a necessary or indispensable party in this action, prudential ripeness concerns, and any other pertinent factors; and

(4)    **maintaining** the administrative closure pending resolution of the show cause order.

**Done** in Jacksonville, Florida, on February 5, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of record