United States District Court
Middle District of Florida
Jacksonville Division

MAXUM INDEMNITY COMPANY,

     *Plaintiff,*

V.                                        NO. 3:18-CV-477-MMH-PDB

CHARLES SHAW & TERRANCE JONES,

     *Defendants.*

---

# Report and Recommendation

Following a July 2017 shooting at an internet café and the filing of tort actions in state court by Terrance Jones and Charles Shaw, Maxum Indemnity Company brought this declaratory judgment action to resolve its obligations under an insurance policy issued to Fun Zone Entertainment, LLC.

At bottom is a straightforward issue of coverage. But since its filing almost three years ago, the action has been plagued by other issues, including whether diversity jurisdiction exists and whether stipulations of dismissal were enforceable. That Jones and Shaw terminated two sets of counsel along the way and that both sides are quick to allege wrongdoing has not helped.

Tangents continue. Maxum responds to an order to show cause why this Court should not dismiss this action without prejudice or continue a stay and moves to join (or, more accurately, to re-join) Fun Zone. Doc. 119 (order to show cause); Doc. 120 (response to order to show cause); Doc. 121 (motion); Doc. 123 (response to motion). Jones and Shaw, now pro se, move to dismiss the action,

for unspecified other sanctions, and for judicial notice of proceedings in a 2017 state-court domestic dispute proceeding. Doc. 126 (motion); Doc. 134 (response).

The undersigned borrows from the report and recommendation on a previous motion, Doc. 105, adopted on March 25, 2020, Doc. 119.

## I.   Overview

Maxum originally sued six defendants: Fun Zone (the alleged owner of the café and the named insured), Bernard McNeal (the alleged operations manager of the café), Allen and Ching Ping Coleman (the alleged owners of the property used for the café), Jones (a shooting victim and an alleged employee, contractor, or laborer of Fun Zone), and Shaw (another shooting victim and another alleged employee, contractor, or laborer of Fun Zone). Doc. 1.

In the complaint, Maxum contends this Court has diversity jurisdiction, alleging (1) it is a Connecticut corporation and its principal place of business is in Georgia, (2) the individual defendants are Florida citizens, (3) Fun Zone "is a limited liability company organized under the laws of Florida," and (4) "[b]ased on its investigation, all of [Fun Zone's] members are Florida citizens." Doc. 1 ¶¶ 2, 5–8.

Maxum alleges it issued Fun Zone a policy that excludes any claim for any injury to anyone working on Fun Zone's behalf, including as an employee, and any claim for any injury arising out of any physical abuse. Doc. 1 at 4–6. Maxum asks this Court to take jurisdiction; to adjudicate the rights of the parties under the policy; to declare the policy does not obligate Maxum to defend or indemnify the defendants in the state actions; to award Maxum its

fees, costs, and expenses for defending the state actions; and to award Maxum its costs for suing here. Doc. 1 at 6–7.

## II.   Procedural History

### A.   *Jones's and Shaw's State Actions*

In August 2017, in the Circuit Court in and for Columbia County, Jones and Shaw, through counsel, filed individual actions against the Colemans and Fun Zone Palace, LLC (doing business as "Treasure Palace" or "Fish Arcade").[1]

Jones and Shaw allege that on July 21, 2017, at 1:30 a.m., two masked gunmen entered an internet café in Lake City, Florida; hit Jones; hit Shaw with a gun; and shot both men. Doc. 1-1 at 3, 4, 8, 10, 11.[2] Jones and Shaw contend the negligence of others caused their injuries. Doc. 1-1 at 5–8, 12–15.

Jones and Shaw amended the state pleadings to name the "correct entity" (Fun Zone Entertainment, LLC, instead of Fun Zone Palace, LLC) and

---

[1] *See* Doc. 6 in *Shaw v. Fun Zone Palace, LLC, etc.*, No. 17-314-CA (Fla. 3d Cir., Columbia County), and Doc. 6 in *Jones v. Fun Zone Palace, LLC, etc.*, No. 17-315-CA (Fla. 3d Cir., Columbia County).

At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). State-court records generally satisfy this standard. *Paez v. Sec'y, Fla. Dep't of Corr.*, 931 F.3d 1304, 1306–07 (11th Cir. 2019).

As done without objection in the previous report and recommendation, Docs. 105, 112, 113, this report and recommendation takes judicial notice of records in Jones's and Shaw's state actions. Judicial notice is appropriate because the records can be readily and accurately determined from a source whose accuracy cannot reasonably be questioned (the state court). Some state-court records are in the record in this federal action. *See* Docs. 1-1, 101-1–101-5. Other state-court records, cited primarily for background, are on the website for the Clerk of the Circuit Court and Comptroller for Columbia County, Florida: www.columbiaclerk.com.

[2] Citations to state-court records filed in this action are to the CM/ECF page numbers.

add as defendants McNeal and Red Diamond Family Fun, LLC (also doing business as "Treasure Palace" or "Fish Arcade").[3]

In a dispute over service of process on Fun Zone in the state actions, Jones and Shaw argued McNeal is an agent of Fun Zone and they had properly served Fun Zone through him. Docs. 101-3, 101-4. Fun Zone argued McNeal was neither a registered agent of Fun Zone nor an employee of "Pete Pital" on the date of service. Doc. 101-3. The state court denied a motion to quash service of process by Fun Zone and ordered Fun Zone to answer. Doc. 101-5.

Jones and Shaw again amended the state pleadings to add as plaintiffs their wives; add as a defendant Hot Seat Entertainment, LLC (an alleged co-employer of Jones and Shaw); remove as a defendant Red Diamond (which had never appeared in the state actions); add an allegation that Jones and Shaw were employees—not contractors—of Fun Zone; and add claims relating to consortium and worker's compensation.[4]

Hot Seat never appeared in the state actions, and Hot Seat is not a defendant in this action. Jones, Shaw, and the Colemans ultimately stipulated to dismissal of the state claims against the Colemans.[5]

The state actions were consolidated for trial only.[6] Mediations have been unsuccessful.[7] The state court recently granted summary judgment to McNeal

---

[3]*See* Doc. 20 in No. 17-314-CA (also Doc. 1-1 in this case); Doc. 20 in No. 17-315-CA.

[4]*See* Doc. 120 in No. 17-314-CA; Doc. 109 in No. 17-315-CA.

[5]*See* Doc. 214 in No. 17-314-CA; Doc. 205 in No. 17-315-CA.

[6]*See* Doc. 229 in No. 17-314-CA; Doc. 216 in No. 17-315-CA.

[7]*See* Docs. 206 and 457 in No. 17-314-CA; Docs. 197 and 415 in No. 17-315-CA.

because Jones and Shaw failed to offer sufficient evidence to sue him individually.[8] The state actions remain pending with no trial date.

## B. *Maxum's Federal Action*

On April 11, 2018—eight months after Jones and Shaw filed the state actions—Maxum filed this declaratory-judgment action against the parties in the state actions at that time (Fun Zone, the Colemans, McNeal, Jones, and Shaw) except for Red Diamond. Doc. 1. In the state actions, Maxum moved to intervene and stay pending resolution of insurance coverage in this action.[9]

For the federal action, a process server tried to serve Fun Zone at its address in its state registration, care of "Pete Pital" as its registered agent, but was unsuccessful because the premises were vacant and workers of a neighboring Subway knew no "Pete Pital." Doc. 101-6. Maxum ultimately filed a return of service by a process server stating he had served Fun Zone "c/o Bernard McNeal" as Fun Zone's "business agent." Doc. 23.

All defendants except Fun Zone answered the declaratory-judgment complaint. Docs. 12, 13, 24, 25.

Observing that Maxum had failed to identify the members of Fun Zone in the complaint, this Court sua sponte ordered Maxum to provide citizenship information to establish diversity jurisdiction under 28 U.S.C. § 1332. Doc. 3. In April 2018, Maxum responded Fun Zone is an insolvent limited liability company organized under Florida law, "Pete Pital" and "Antwain Pital" were its only members, and records connect the Pitals to Florida only. Doc. 5. But

---

[8]*See* Doc. 409 in No. 17-314-CA; Doc. 370 in No. 17-315-CA.

[9]*See* Docs. 56, 72, 79 in No. 17-314-CA; Docs. 54, 65, 71 in No. 17-315-CA.

Maxum cautioned that the Pitals may not be real people. Doc. 5 at 2. Maxum argued that if they are not real people, "their citizenship should be disregarded for purposes of determining diversity jurisdiction." Doc. 5 at 2. Maxum alternatively requested leave to conduct limited discovery "to establish the citizenship of Fun Zone's members" or, as a last resort, dismissal without prejudice "so that discovery can be developed" in the state actions. Doc. 5 at 3–4. Maxum contended, "Fun Zone's citizenship will necessarily be clarified in the underlying action." Doc. 5 at 4.

In May 2018, the Court conducted a conference on jurisdiction. Docs. 8, 116. This colloquy occurred:

> [THE COURT]: All right. So, Mr. Warren, I feel your pain. You can't find these people, but I'm not quite sure … where that leaves us.
>
> I understand that you have tried to figure out who … the two Mr. Pitals are, and that you can't find any record of them existing.
>
> You suggest that the Court should disregard them for purposes of diversity jurisdiction, but I'm not aware of any legal authority that allows me to do that. I know that we can do it in removal, where … there's fraudulent joinder, but … you cite this case saying that it's a nonexistent entity, but I don't know how you can claim it's a nonexistent entity when the only reason you're in it is because of that entity, you as their insurer.

Doc. 116 at 1–2. Maxum's counsel explained Maxum had undertaken defense of Fun Zone and McNeal in the state actions, defending Fun Zone primarily through McNeal as its "registered agent." Doc. 116 at 2. Maxum's counsel represented, "[W]e have confirmed that Antwain Pital and Pete Pital are the only two members of … the LLC, and that is reflected in the filings with the division of corporations with the State of Florida, which to my knowledge are filed under penalty of perjury." Doc. 116 at 2. Maxum's counsel explained that use of "Pital" in multiple places in state filings and the only name in the filings

led him to believe the spelling was intentional and Fun Zone might be a "shell company or LLC" formed by the "registered agent" McNeal, who had signed the insurance policy. Doc. 116 at 3. Maxum's counsel expressed a desire to conduct discovery, including a deposition of McNeal, to determine who had paid rent for Fun Zone. Doc. 116 at 3–5. The colloquy continued:

> [THE COURT]: … I'm not trying to punt you out the door, but what I don't want to do—and I've had this discussion on more than one occasion with folks—I don't want to spend two years of my life working on a case only in the end to have it go up to the Eleventh Circuit … to say hey you've wasted two years because you don't have jurisdiction.
>
> I don't know if you've seen it, but within the last year, the Eleventh Circuit did that twice, not to me but to other judges, and in one of them kind of really chided … the court and the lawyers for not doing the hard work that needed to be done to determine jurisdiction.
>
> And I'm not going to … follow that course. … I'm happy to give you some more time, but in the end if we can't determine the citizenship of these individuals, I'm going to have to dismiss it. It will, of course, be without prejudice.
>
> … [I]t obviously doesn't preclude you from pursuing the claim in state court and it wouldn't preclude you from pursuing the claim further here in federal court if you determine their citizenship, but at least at this point, … this is not something that I can say: Okay, that's close enough. We'll go forward.
>
> It's got to be actual, definitive jurisdiction or it's, you know, take the claim over to state court.
>
> And it may be … that it would make more sense to just pursue it in state court, rather than this exercise in trying to find the citizenship.
>
> But that's a business decision and I'll leave that conversation to you and your client.
>
> And I'm glad to give you some more time to look at this issue, but … if I'm not convinced, then you're going to have to decide whether you want to just … pursue it in state court or wait and try again later when you get more information.

[MAXUM'S COUNSEL]: Thank you. I appreciate that, Your Honor. And ... the last thing I want to is that—and I have seen those cases ... where the Eleventh Circuit ... has definitely expressed real concern about this issue and we want to be ... 110 percent confident in the information that we present to the Court, too, because the last thing that we want is any decision issued by Your Honor ... going up to the Eleventh Circuit and then ... getting plucked out because of a jurisdictional issue.

...

THE COURT: Okay. One thing that you said earlier that raised some concern in my mind, and I didn't raise it then but I'll say it now, is you said that from all of the filings with ... the State of Florida, secretary of state that these are the only two members of the LLC that are identified. And I don't know exactly what universe of documents you're looking at when you say that, but in my experience all of the members of the LLC are not required to be identified in those filings.

Often we just see the managing member, but ... those documents don't usually identify the entire universe of the members. It's generally the documents ... creating the LLC that identify those members rather than the documents that are filed with the State of Florida. So I just throw that out there in an abundance of caution because if later what I'm being told is these are the only people listed with the secretary of state, I'm likely to say, yeah, that's not good enough.

...

[MAXUM'S COUNSEL]: Thank you, Your Honor.

And I would just ... add ... I had verbal conversations with appointed defense counsel because of this very issue as well, and he ... told me that the only members were the Pital, P-I-T-A-L, and at that time indicated that there wasn't an operating agreement, but this is—in the allotted time that I have to research this issue I'm going to continue to follow up with appointed defense counsel and see if any documents have been produced and generated on that regard as well.

Doc. 116 at 5–8. At the end of the conference, this Court directed Maxum to provide a supplemental memorandum and documentation. Doc. 116 at 8.

Through a declaration of counsel dated June 7, 2018, Doc. 14-1, Maxum represented: (1) McNeal organized Fun Zone on September 20, 2015; (2) McNeal applied for insurance as Fun Zone's sole "member or manager" the next day; (3) McNeal sold his ownership interest in Fun Zone to Fortune Amusement, LLC, on October 18, 2016; and (4) Suresh Kumar Patel is the sole member of Fortune Amusement. Doc. 14 at 1–2. Maxum stated,

> Maxum performed a diligent search of Patel's domicile, and respectfully submits that all evidence indicates that Patel is a citizen of Florida. For instance, Patel has maintained an address in Lakeland, Florida from February 2004 through present; Patel has a Florida driver's license; Patel is registered to vote in Florida; and, Patel maintains a vehicle registration in Florida. … Simply stated, there is no evidence that Patel is a citizen of any state other than Florida.

Doc. 14 at 3. Maxum contended complete diversity exists because Maxum is a Georgia and Connecticut citizen and all defendants are Florida citizens. Doc. 14 at 3.

Maxum attached to counsel's declaration an "Agreement for Sale of Business" identifying "McNeal Bernard of Fun Zone Entertainment LLC" as the seller and "Fortune Amusement LLC" as the buyer for the sale of Fun Zone for $9,000. Doc. 14-1 at 10–12. The agreement is executed on October 18, 2016, by McNeal as "General Manager" of Fun Zone and Patel as "[G]eneral Manager" of Fortune Amusement. Doc. 14-1 at 12.

Maxum also attached to counsel's declaration a "Florida Commercial Insurance Application" for Fun Zone signed with an illegible signature on September 23, 2015. Doc. 14-1 at 5–8. Under "Applicant Information" is "Fun Zone Entertainment, LLC," and next to "No. of Members and Managers" is "1." Doc. 14-1 at 5. Under "Contact Information" and next to "Contact Name" is

"Bernard McNeil – Owner's Husband," and next to "Contact Type" is "Manager." Doc. 14-1 at 6.

Maxum also attached a "Comprehensive Business Report" for Fortune Amusement showing it is an "inactive limited liability corporation," its "filing date" was December 5, 2016, and its registered agent is "Sureshkumar" Patel, Doc. 14-1 at 14–16; and a "Comprehensive Report" about "Sureshkumar" Patel, Doc. 14-1 at 18–32.

Observing that the documentation Maxum submitted suggests that Patel was the registered agent—not a member—of Fortune Amusement, *see* Doc. 14-1 at 15, this Court directed Maxum to provide another supplemental memorandum and authorized Maxum to conduct jurisdictional discovery, Doc. 15.

In a certificate of interested persons filed on July 3, 2018, Maxum listed, under Fun Zone, "Bernard McNeal; Pete Pital; Antwain Pital." Doc. 16 at 1. In a certificate of interested persons filed on July 13, 2018, McNeal listed under himself only lawyers and, under Fun Zone, lawyers, Antwain Pital, Pete Pital, Suresh Kumar Jayarambhai Patel, Girish Patel, and Mike Patel. Doc. 20 at 2.

Maxum thereafter explained it had deposed Patel and learned that the sale reflected in the October 18, 2016, agreement between McNeal and Fortune Amusement had never transpired. Doc. 27 at 1–3. Reversing its previous position, Maxum contended the only member of Fun Zone "has always been McNeal, a citizen of Florida," making diversity complete. Doc. 27 at 2.

Maxum provided the transcript of Patel's deposition (taken in Georgia). Doc. 27-1. Patel testified he had executed the October 18, 2016, agreement and

Fortune Amusement had been a newly opened active company at the time, but he never paid $9,000 or otherwise closed the deal because, while monitoring the business for a few months, he learned "Bernard's people" were thieves and the police said the operation was illegal. Doc. 27-1.

Maxum provided additional documents:

—electronic articles of organization for Fortune Amusement LLC filed with the Florida Secretary of State on December 5, 2016, indicating "Sureshkumar Patel" is the registered agent for the company and is the person authorized to manage the company, Doc. 27-2;[10]

—an informational report of an officer with the Brevard County Sheriff's Office describing his undercover investigation into gambling at Red Diamond at 6255 North U.S. Highway 1, in Cocoa, Florida, on January 12 and 19, 2017, and explaining that he and other agents had been conducting "compliance checks" of suspected illegal gambling in the county and had been conducting a compliance check of Fun Zone in the same shopping plaza as Red Diamond on January 23, 2017, when they saw customers exit Red Diamond; but when the agents completed their compliance check of Fun Zone and walked to Red Diamond, the open sign was off and the front doors were locked, and Red Diamond remained closed during return visits on January 24 and February 10, 2017, Doc. 27-3;[11]

---

[10]Despite Patel's testimony that Fortune Amusement was active when he signed the October 18, 2016, agreement, Doc. 27-1 at 18–19, Maxum, citing the articles of organization, said this about the company: "Indeed, Fortune Amusement was not even an active Florida limited liability company at the time the Sale Agreement was signed by Patel. Fortune Amusement was not established as an active company until 12/5/2016, or approximately seven weeks after the Sale Agreement." Doc. 27 at 2 n.2.

[11]Maxum inaccurately described the Brevard County Sheriff's Office report as follows: "Brevard County Sherriff's [sic] Office … investigated Fun Zone, as well as a similar business in the same shopping plaza known as 'Red Diamond.' … BCSO investigated these establishments on 1/12/2017, 1/19/2017, 1/23/2017, 1/24/2017, and 2/10/2017. … The BCSO investigation culminated in two charges against Fun Zone and Red Diamond: (1) keeping a gambling house in violation of Florida Statute § 849.01; and, (2) possessing or owning a slot machine in violation of Florida Statute § 849.15." Doc. 27 at 2–3.

The report describes the investigation of Red Diamond only and appears to be "for information purposes" only without an indication that charges were actually filed against any person or entity. Doc. 27-3.

—a second "Florida Commercial Insurance Application" for Fun Zone signed with an illegible signature on November 18, 2016, showing "Fun Zone Entertainment, LLC," under "Applicant Information," "1" next to "No. of Members and Managers," "Bernard McNeil – Owner's Husband" next to "Contact Name," and "Manager" next to "Contact Type," Doc. 27-4 at 2–3;[12]

—a "Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments 2017 Paid Personal Property" by the Brevard County Tax Collector to "Fun Zone Entertainment LLC [and] Bernard McNeal," Doc. 27-5;[13]

—a "2017 Notice of Proposed Property Taxes" by Brevard County Taxing Authorities to "Fun Zone Entertainment LLC [and] Bernard McNeal," Doc. 27-6;

—a screenshot from the Brevard County Tax Collector's website indicating no taxes were due in 2016 or 2017 for "Owner: Fun Zone Entertainment LLC" and elsewhere stating, "Other owners: Bernard McNeal," Doc. 27-7;[14] and

—an "Assignment of Lease" signed by McNeal as the "Manager" of Fun Zone on October 18, 2017, Doc. 27-8.[15]

Maxum thereafter obtained a clerk's default against Fun Zone, Docs. 26, 28, and this Court notified the parties that its "sua sponte inquiry into its subject matter jurisdiction is satisfied." Doc. 29.

But complications ensued.

---

[12]Maxum inaccurately described the insurance application as follows: "McNeal identified himself as the owner and only member of Fun Zone in his insurance policy application to Maxum[.]" Doc. 27 at 5.

[13]Maxum inaccurately described the notice of ad valorem and non-ad valorem assessments as follows: "McNeal identifies himself as the <u>current</u> owner of Fun Zone on file with the Brevard County Tax Collector." Doc. 27 at 5 (emphasis in original).

[14]Maxum inaccurately described the notice of proposed property taxes and screenshot as follows: "McNeal identifies himself as the <u>current</u> owner of Fun Zone with the Brevard County Property Appraiser." Doc. 27 at 5 (emphasis in original).

[15]Maxum inaccurately described the assignment of lease as follows: "McNeal identified himself as the managing member of Fun Zone in commercial lease documents with regard to Fun Zone's only property, located in Brevard County, Florida." Doc. 27 at 5.

McNeal moved to quash service of the notice of Patel's deposition and to quash a subpoena to Patel for documents, or for leave to re-depose Patel. Doc. 33. McNeal explained Maxum had not informed the other parties of the deposition and, therefore, counsel for the other parties had not been present and Patel had not been cross-examined. Doc. 33. McNeal argued, "Not only should the Subpoena be quashed, but the Court's reliance upon the transcript to satisfy the Court's Jurisdictional inquiry should also be precluded." Doc. 33 at 2.

Three stipulations of no duty to defend and no indemnification followed. Docs. 34, 39, 40.

Maxum and the Colemans entered a stipulation. Doc. 34. Based on that stipulation, this Court dismissed Maxum's claims against the Colemans, directed the parties to bear their own fees and costs, and directed the clerk to "terminate" the Colemans from the docket. Doc. 36.

Maxum and McNeal entered a stipulation. Doc. 39. The stipulation includes these statements: "The premises where the Incident occurred was operated by FUN ZONE ENTERTAINMENT, LLC"; "As a result of the stipulations made herein, and upon approval by the Court, McNeal withdraws his Motion to Quash Service of the Notice for Deposition and Subpoena for Document Production of Suresh Kumar Patel"; and "Maxum and McNeal make the stipulations and agreements in this document regardless of this Court's personal or subject matter jurisdiction over this action." Doc. 39 ¶¶ 3, 14, 15. As agreed elsewhere in the stipulation, Doc. 39 ¶ 12, defense counsel appointed by Maxum to represent McNeal in the state actions and McNeal's personal

counsel entered a "joint stipulation as substitution of counsel" in the state actions, and McNeal's personal counsel took over his defense there.[16]

Maxum, Jones, and Shaw assertedly entered a stipulation. Doc. 40. The stipulation includes these statements:

> Upon information and belief, the premises where the Incident occurred was operated by FUN ZONE ENTERTAINMENT, LLC ("Fun Zone") through BERNARD MCNEAL as its manager or the operator has not been properly identified to date. At the time of the Incident, Shaw and Jones were either employees of Fun Zone, independent contractors of Fun Zone, or non-employee laborers of Fun Zone or of the operator if not Fun Zone. Regardless of the outcome in their underlying cases, Shaw and Jones agree to never attempt to collect against the Maxum policy.

Doc. 40 ¶ 3. Because of the stipulation, on September 4, 2018, in the state actions, Maxum withdrew the motions to stay and canceled a hearing on those motions.[17] Doc. 101-1.

Unsure of the posture of the case considering McNeal's outstanding motion to quash service of the notice of Patel's deposition and the subpoena to Patel for documents, Doc. 33, this Court conducted another conference in September 2018, Doc. 42; Doc. 86 at 3. McNeal's counsel challenged the veracity of Patel's deposition testimony regarding "any allegations that [McNeal] has any role or any part" in Fun Zone. Doc. 86 at 5. This Court asked, "[D]o we know Mr. Patel's citizenship?" Doc. 86 at 5. Despite earlier representing that Patel is a Florida citizen, Maxum's counsel responded, "Mr. Patel's citizenship, we don't know for certain, no. He is—and, again, Maxum's position is that he's absolutely not a member of Fun Zone. But it does look like if we were just to look at where he resides, he resides in Georgia, which I

---

[16]*See* Doc. 100 in No. 17-314-CA; Doc. 86 in No. 17-315-CA.

[17]*See* Doc. 99 in No. 17-CA-314; Doc. 91 in No. 17-CA-315.

certainly, you know, wouldn't want to misrepresent that to the Court." Doc. 86 at 5–6. This Court responded, "[Y]ou-all are wanting me to take affirmative actions in this case with these joint stipulations, but it appears … I still don't know the citizenship of Fun Zone …. And until I know [its] citizenship …, I can't do anything. Because if it's Mr. Patel, I have no jurisdiction, if he is indeed a citizen of Georgia, as is your belief. Residence does not equal citizenship, but if he is a citizen of Georgia, I don't have jurisdiction." Doc. 86 at 7. This Court continued, "[W]hen you-all filed these, … Mr. McNeal, through counsel, said he was withdrawing the motion to quash service and the request to redepose Mr. Patel, my hope was that that meant that you-all had agreed that Mr. McNeal was the proper party. If he's not, then I … can't proceed any further until we know who the property party is." Doc. 86 at 7.

This Court directed the parties to confer and notify this Court of the status of jurisdiction and the motion to quash:

> THE COURT: Well … accepting the information that is before the Court, I would seem to have jurisdiction, except that you're now telling me that that information is wrong.
>
> And so right now there's a motion to quash service and to have Mr. Patel redeposed.
>
> And I guess [Maxum's counsel] would respond to that and you-all would litigate the issue of the membership of Fun Zone.
>
> [MCNEAL'S COUNSEL]: What if the motion was withdrawn?
>
> I mean, … I'm not trying to be facetious about it, but if the motion was withdrawn …
>
> THE COURT: But you're saying you're withdrawing it, but you're telling me that the Court is acting on a false premise.

[MCNEAL'S COUNSEL]: I don't know, because I haven't had a chance to depose the gentleman. So I'm not saying one way or the other, because I don't know his citizenship to be able to answer that question.

THE COURT: You're missing the point. I'm not—

[MCNEAL'S COUNSEL]: I understand what you're saying.

That's why I said I'm not trying to be facetious about it. I guess I'm trying to figure out an end to the problem.

THE COURT: Well, your withdrawing the motion means that … Mr. McNeal is the member of the LLC.

[MCNEAL'S COUNSEL]: By what means? By the allegations made by Maxum in the jurisdictional statement?

THE COURT: Yes.

[MCNEAL'S COUNSEL]: … I disagree with that, but I agree that in their statement they represent that. But I don't know that that's an admission on the part of Mr. McNeal by virtue of saying they don't have a duty to cover him in this coverage action, which is all we're saying.

THE COURT: Right. But what—

[MCNEAL'S COUNSEL]: Let me out, because they don't have a duty to provide a defense to me.

THE COURT: Right. But what you're … missing … is if I get rid of Mr. McNeal, Mr. Shaw, and Mr. Jones—if I close my eyes to the discussion that we've had here today and go ahead and dismiss those people based on the representations that were in … their response to the jurisdictional statement, the problem is that you-all are telling me that the allegations in that jurisdictional statement are incorrect—or in that response to the jurisdiction—and I still have a case that is Maxum versus Fun Zone—

[MCNEAL'S COUNSEL]: Right. Which still creates a conflict, which still doesn't give you jurisdiction.

THE COURT:—where I still need to know the membership of Fun Zone. I can't—I can't keep that case if I don't know the membership of Fun Zone.

16

And so I'm not—I don't know what you-all want me—I didn't make these rules, you know, I'm just applying them. And I'm not trying to make this harder than it is. It just is what it is.

… I have to know who the members of Fun Zone are in order to know if I have jurisdiction. And I'm not going to take any further action in this case until we determine that.

Other than if there's a—if there's a dismissal without prejudice because I don't have jurisdiction or because you can't determine it, that, frankly, is not uncommon.

There are other cases in which because of complicated corporate structures, the parties come back to me and say: We can't tell … who the members are, and so we just want to dismiss it without prejudice and go over to state court.

And maybe… after we talk today, you-all will decide that that's the better course of action rather than spending a bunch of money litigating the citizenship of Fun Zone.

I can't make that decision for you. The only thing that I know is until I have jurisdiction, I'm not acting.

[MCNEAL'S COUNSEL]: And how long … would the plaintiff have to, I guess, submit to the Court substantial proof of the—for jurisdictional purposes?

[MAXUM'S COUNSEL]: Well—and … also responding to the motion to quash service.

THE COURT: Right. … [T]hey have to respond to the motion to quash service, and then we find out if Mr. Patel gets redeposed or not, and then we make a determination of whether … he's the member or not.

Frankly, … I haven't looked at the merits of the motion to quash service. … So why don't you-all agree to the motion and just redepose this guy and get an answer to whether there's jurisdiction.

If not, frankly, to my mind, you're better off going to state court, because your client is going to spend more money fighting over whether or not there's jurisdiction in this court. It just doesn't make a lot of sense.

17

Now, having said that, your client may have a very good reason for wanting to be in federal court rather than state court, and I understand that. Everybody—lawyers and clients all have feelings about which one they like better for lots of different reasons.

I'm just not sure that this is the most productive use of anybody's resources. And maybe what we should do is I should give you and [McNeal's counsel]—and I'm not forgetting that Mr. Shaw and Mr. Jones are getting dragged along in this.

…

I'm going to give you-all 14 days to have some conversations amongst yourselves, and in large part, that's really between [Maxum's counsel] and [McNeal's counsel] ….

And you-all can talk about whether you want to stop arguing about who owns Fun Zone and go over to state court and just pick it up there, or whether you-all want to litigate the ownership of Fun Zone here.

And it doesn't matter to me, but those are the two options.

So I'll give you-all 14 days to see if you can resolve it, and then I'm going to give you another 14 days, if you don't resolve it, to respond to the motion to quash.

Although, as I indicated, [Maxum's counsel], I'm not really sure how the Court could really deny the motion to the extent that it seeks to redepose Mr. Patel, because at the end of the day, the Court needs to know whether or not it has jurisdiction.

So it wouldn't be a question so much of whether it was right or wrong to proceed with the deposition at that point in time, it would more just be a question of: We've got to know the truth here. I've got to know if I have jurisdiction or not.

And I would almost think that you-all could agree with that so that we don't end up remaining in limbo, but I'm not going to ask you to resolve that at this time.

… I'll give you-all until September 24th to file a notice with the Court regarding the status of the question of jurisdiction.

And as I see it, there can really only be two answers to that.

18

One is it remains unresolved. The other is that Mr. McNeal stipulates that he is, in fact, a member of Fun Zone—the sole member of Fun Zone.

And I'm not asking for anybody to say anything about that right now—or I guess there can be other members of … Fun Zone, but that they have to be identified.

And in the event that there's a stipulation that Mr. McNeal is the member of Fun Zone, then we know his citizenship and that resolves the jurisdictional inquiry and we go forward.

If it is that the question of jurisdiction is unresolved, then, [Maxum's counsel], you will have until October 5th to file a response to the motion to quash and redepose, and then the Court will—will resolve that motion.

… I'm also going to have you-all discuss not only the citizenship of Fun Zone, but also whether you can reach an agreement as to that motion. Because I really do think that that motion is not worth spending the money to litigate, because the Court has to determine jurisdiction.

So when you file your notice …, why don't you also advise the Court whether you are in agreement that Mr. Patel should be redeposed and a time frame for doing so.

…

THE COURT: [Maxum's Counsel], do you wish to be heard as to any of that?

[MAXUM'S COUNSEL]: I—no, I don't have any issue with that and that sounds good.

THE COURT: All right. [McNeal's counsel]?

[MCNEAL'S COUNSEL]: No, ma'am. That sounds good.

…

THE COURT: All right. I will anxiously await a notice that tells me that you-all are going over to state court.

Doc. 86 at 20–28.

A few weeks later, Maxum notified this Court it was voluntarily dismissing the "action" against Fun Zone without prejudice, citing Federal Rule of Civil Procedure 41(a)(1)(A)(i) and stating, "the dismissal of Fun Zone unequivocally creates diversity jurisdiction and allows the Court to adjudicate the rights of the remaining parties." Doc. 44 at 1. Maxum also asked this Court to dismiss from this action the then-remaining defendants—McNeal, Jones, and Shaw—pursuant to the stipulations. Doc. 44 at 2.

The same month, Jones and Shaw's counsel moved to withdraw at their request. Doc. 45. Referencing the stipulation of Maxum, Jones, and Shaw, counsel asked this Court to "refrain from entering any orders prejudicial to [Jones or Shaw] until they have … an opportunity to retain new counsel or make their positions known regarding this issue." Doc. 45 at 2. Counsel also moved and were permitted to withdraw from representing them in the state actions.[18] Doc. 101-2.

This Court conducted another conference in October 2018. Doc. 46. Jones and Shaw stated their desire for their original counsel to cease representing them and explained they would be represented by new counsel. Doc. 48; Doc. 80 at 9–11, 13. At that conference, referencing the dismissal of Fun Zone, Maxum's counsel contended, "Maxum feels like they have … really gone above and beyond to, you know, satisfy the Court's jurisdictional inquiry in ensuring that the Court has complete subject matter jurisdiction to enter the stipulations." Doc. 80 at 14. This Court observed, "With the absence of Fun Zone, the Court is satisfied that it has diversity subject matter jurisdiction over the remaining defendants." Doc. 80 at 22.

---

[18] *See* Docs. 109, 116 in No. 17-CA-314; Docs. 98, 105 in No. 17-CA-315.

This Court: (1) dismissed the claims against Fun Zone based on Maxum's notice of voluntary dismissal; (2) terminated McNeal's motion to quash; (3) dismissed McNeal based on the stipulation of Maxum and McNeal and retained "jurisdiction to enforce the terms of the stipulation"; (4) permitted Jones and Shaw's original counsel to withdraw and relieved them of further responsibility beyond work necessary to transition the defense to new counsel; (5) directed Jones and Shaw's new counsel to enter an appearance; and (6) directed Maxum's counsel and Jones and Shaw's new counsel to confer to resolve the "status of the case." Doc. 48; Doc. 80 at 22–23. A corresponding order followed. Doc. 49.

Jones and Shaw's new counsel entered notices of appearance in the state and federal actions.[19] Docs. 50–55.

The state court permitted counsel for Fun Zone (provided by Maxum) to withdraw on September 20, 2018.[20] In the motion to withdraw, Fun Zone's counsel represented:

> Documents show that Mr. McNeal was not the principal of the company, [Fun Zone], after 2016. The original lease signed by [McNeal] for the location where the incident occurred was between Coleman and Red Diamond Family Fun, LLC only. It is alleged that the lease to the subject premises was altered by an otherwise uninsured owner of the property to reflect the name of [Fun Zone] well after [McNeal's] signature was placed on the lease and after the incidents described in Plaintiff's Complaint.
>
> [] Despite Mr. McNeal selling [Fun Zone] to Suresh Kumar Patel, who paid $9,000 in cash to Mr. McNeal, Suresh Patel recently testified under oath in Federal Court that despite signing documents

---

[19] *See* Doc. 113 in No. 17-CA-314; Doc. 102 in No. 17-CA-315.

[20] *See* Doc. 107 in No. 17-314-CA; Doc. 96 in No. 17-315-CA.

evidencing a sale by [McNeal] and Suresh Patel, Mr. Patel indicated that he really didn't close on the sale.

[] Mr. McNeal (who we represent), Mr. Antwain Pital and Suresh Patel, the purchaser of [Fun Zone] have a conflict over who owned [Fun Zone].

[] Conroy Simberg has a conflict of interest with the Pitals as documented owners of [Fun Zone] and our current client, [McNeal], has a conflict with Suresh Kumar Patel, Antwain Pital and Pete Pital who all now deny that they purchased [Fun Zone].[21]

Substantial motion practice and another conference ensued.[22] *See* Docs. 56–59, 61–66, 68, 69, 71, 73–77, 82, 83, 84, 88, 89, 91, 93, 94.

Ultimately, Jones and Shaw, through new counsel, filed a motion asking this Court to "vacate" (1) the stipulation of Maxum and the Colemans, Doc. 34; (2) the order dismissing the claims against the Colemans, Doc. 36; (3) the stipulation of Maxum and McNeal, Doc. 39; (4) the order dismissing the claims against McNeal, Doc. 49; and (5) the stipulation of Maxum, Jones, and Shaw, Doc. 40. Doc. 95 at 1.

Adopting the previous report and recommendation, Doc. 105, this Court: (1) found this action presents an actual controversy under Article III because neither a current judgment against Fun Zone in the state action nor Fun Zone's presence in this action is necessary for an actual controversy; (2) declined to enforce the stipulation of Maxum, Jones, and Shaw because Maxum provided insufficient evidence that they had given their counsel clear and unequivocal authority to enter into the stipulation; and (3) declined to vacate the

---

[21]Doc. 107 in No. 17-314-CA; Doc. 82 in No. 17-315-CA.

[22]To date, no one has ordered the transcript of the conference. Doc. 85 (minutes). The undersigned read the rough transcript. The discussion does not pertain to the matters now before the Court except to show more resources the Court has had to expend to address matters unrelated to coverage under the policy.

stipulation of Maxum and the Colemans, the stipulation of Maxum and McNeal, and the resulting dismissal orders because Jones and Shaw presented no ground to interfere with stipulations by other parties, Doc. 119 at 14–15 (order); Doc. 105 (report and recommendation). This Court also directed Maxum to show cause "why this Court should not dismiss this action without prejudice or continue the stay considering that Maxum is not providing a defense to any party in the state actions, that Fun Zone may be a necessary or indispensable party in this action, prudential ripeness concerns, and any other pertinent factors." Doc. 119 at 14–15.

The response to the order to show cause, Doc. 120, and the motions and responses now before the Court, Docs. 121, 123, 126, 134, followed.

New counsel thereafter appeared to represent Maxum in place of original counsel. Doc. 127. Jones and Shaw asked this Court to find Maxum violated the rules on lawyer appearance and withdrawal and to issue unspecified sanctions for the asserted violation. Doc. 131. The undersigned permitted Maxum's original counsel to withdraw and denied Jones and Shaw's request as without a legal basis. Doc. 136.

Along the way, Maxum moved for clarification of the deadlines in the case management and scheduling order. Doc. 65. This Court granted the motion to the extent it vacated the case management and scheduling order, stayed the case, and directed the clerk to administratively close the case. Doc. 67. To date, no new case management and scheduling order has been entered, and the case remains administratively closed.

## III.   Law & Analysis

Turning to the simplest motion first, the undersigned addresses Jones and Shaw's motion to dismiss, for sanctions, and for judicial notice, Doc. 126, and then addresses Maxum's response to the order to show cause, Doc. 120, and motion to re-join Fun Zone, Doc. 121. In the end, dismissal is warranted, but not for the reasons Jones and Shaw present.

### A.   *Jones and Shaw's Motion to Dismiss, for Sanctions, and for Judicial Notice*

Jones and Shaw ask this Court to dismiss this action and to sanction Maxum, McNeal, and their respective lawyers for "perpetrating Fraud on this Court." Doc. 126 at 5.

Besides documents filed and statements made during this action, Jones and Shaw rely on a transcript of a conference on April 4, 2017, before a state-court judge on a request for a temporary restraining order in a domestic dispute matter between a petitioner and a respondent unrelated to this action. Doc. 126-1. During the conference, the petitioner informs the judge she manages "Treasure Island" and "Hot Seat," those businesses are side-by-side in Lake City, and she could call her "bossman," Bernard McNeal, to confirm facts pertinent to injunctive relief. Doc. 126-1 at 4, 5. Later, someone stating he is McNeal called into the hearing and, without being placed under oath, confirmed the petitioner and the respondent work for him and he owns two places side-by-side in Lake City. Doc. 126-1 at 20, 21.

Jones and Shaw also rely on an asserted un-transcribed statement during a videotaped follow-up conference on April 25, 2017, in which the petitioner appears to explain she was late for the conference because money

24

was missing from her job and tells someone on the phone "'it's in the safe with Bernard's name on it.'" Doc. 126 at 3.

Jones and Shaw also rely on an "Agreement for Sale of Business Sole Proprietorship" between "Bernard McNeal (Fun Zone Palace)" and "Girish Patel & Mike Patel" for the sale of "Fun Zone Palace" at "1438 & 1472 W US HWY 90 Lake City Fl" for $15,000, executed on February 26, 2017. Doc. 124-3. (The address of the shooting is described in the state pleadings as 1472 W US Highway 90, Lake City, FL, "and/or" 622 SE Arlington Boulevard, Lake City, FL 32055, Doc. 1-1 ¶¶ 6, 7.).

According to Jones and Shaw, the transcript, the un-transcribed statement, and the February 26, 2017, agreement show (1) Maxum's original counsel committed fraud on this Court by submitting the June 7, 2018, declaration representing McNeal sold Fun Zone to Fortune Amusement, Doc. 14-1; and (2) the October 18, 2016, agreement for the sale of Fun Zone to Fortune Amusement, Doc. 14-1, is fraudulent. Doc. 126 at 6. They ask, "How can one provide better proof of fraud to allow for the dismissal of the claim and the harshest sanctions?" Doc. 126 at 6–7.

Jones and Shaw cite Florida law on judicial notice and state, "As [t]o the two hearings that took place on April 4, 2017 and April 25, 2017 … and to which the Orders are part of the Record of the Court, this Court is more than able to take Judicial Notice and for purposes of this action, should take Judicial Notice in order to resolve many of the fraud which has been placed upon this Court[.]" Doc. 126 at 7 (citing Fla. Stat. §§ 90.202, 90.203).

Maxum counters that Jones and Shaw's "arguments that Maxum perpetrated fraud on the Court are baseless and entirely without merit." Doc.

134 at 1. According to Maxum, "All statements and actions by Maxum throughout the course of this litigation have been sincere and earnest. The alleged 'fraud' complained of … is nothing more than Maxum's reliance on public records. To this effect, [the motion] has no foundation in law or fact."[23] Doc. 134 at 1.

Outside the discovery context, a federal district court has discretion to impose sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and its inherent power. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

Under Rule 11, a court may sanction a lawyer, a law firm, or a party for a filing that is frivolous or used for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b), (c). The standard is objective. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). For frivolity, a court asks whether the claim is objectively frivolous and whether the lawyer who made the claim should have been aware the claim was frivolous. *Peer*, 606 F.3d at 1311. Importantly here, a "district court is not required to assess fraud separate from its frivolousness inquiry simply because a party seeks a finding characterized in terms of fraud." *Rowe v. Gary*, 773 F. App'x 500, 503 (11th Cir. 2019).

---

[23]Maxum cites some cases discussing the standard for fraud on the court in the context of vacating a judgment or other decision. *See* Doc. 134 at 4–5 (citing *Davenport Recycling Assocs. v. Comm'r of Internal Revenue*, 220 F.3d 1255, 1262 (11th Cir. 2000) (explaining in context of request to vacate tax court decision, fraud on court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision," preventing opposing party "from fully and fairly presenting his case"); and *Patterson v. Lew*, 265 F. App'x. 767, 768 (11th Cir. 2008) (explaining in context of Rule 60(b) motion to set aside judgment that finding of fraud on court should be reserved for "only the most egregious misconduct, such as bribery of a judge or members of the jury, or the fabrication of evidence by a party")). The undersigned does not further discuss those cases and those standards because Jones and Shaw do not request vacatur of a judgment or other decision.

Under § 1927, a court may order a lawyer who "unreasonably and vexatiously" multiplies proceedings to pay resulting excess costs, expenses, and attorney's fees.[24] 28 U.S.C. § 1927. Section 1927 is penal and therefore strictly construed. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010). A lawyer multiplies proceedings unreasonably and vexatiously only if his conduct is "so egregious that it is tantamount to bad faith." *Id.* at 1282 (quoted authority omitted); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (same). The standard is objective, comparing the lawyer's conduct to how a reasonable lawyer would have acted under the circumstances. *Id.* at 1282, 1284. "The statute imposes a high standard that requires the moving party to show that the other side engaged in behavior that grossly deviates from reasonable conduct." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (cleaned up).

Under a court's inherent authority, the court can sanction a party, lawyer, or law firm for "willful disobedience of a court order" or where the party, lawyer, or law firm "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 45–46 (1991) (cleaned up); *accord Marx v. Gen. Revenue. Corp.*, 568 U.S. 371, 382 (2013). "A court also has the power to conduct an independent investigation to determine whether it has been the victim of fraud." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. A person acts in bad faith if the person "knowingly or recklessly raises a frivolous argument, or argues a

---

[24]The amount "cannot exceed the costs occasioned by the objectionable conduct." *Peer*, 606 F.3d at 1314.

meritorious claim for the purpose of harassing an opponent." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoted authority omitted). The standard is subjective. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). "When considering sanctions under the court's inherent power, the threshold of bad faith conduct is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Peer*, 606 F.3d at 1316 (cleaned up).

Though sought by Jones and Shaw, dismissal of this action would disadvantage them to the extent a decision here would clarify obligations, if any, under the policy and thereby direct their decision-making and strategy in their state actions. Puzzling motivation aside, whether analyzing the motion under Rule 11, § 1927, or inherent authority, denial is warranted because Jones and Shaw provide insufficient evidence to suggest Maxum, McNeal, or counsel perpetrated fraud on this Court or otherwise engaged in behavior warranting sanctions, much less the extreme sanction of dismissal.

All along, this Court's interest in Fun Zone's membership has been limited to its jurisdictional inquiry: who were the members of Fun Zone on April 11, 2018, when Maxum filed this action, and what were their citizenships at that time?[25] The record shows the answer is far from clear and difficult if

---

[25]"[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoted authority omitted). "This time-of-filing rule … measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Id.* at 570–71. An "exception" to the rule (used by Maxum here) allows a party to cure a jurisdictional defect by dismissing the party that destroyed diversity. *Id.* at 572.

not impossible to determine. The record may show sloppy lawyering from time to time but does not show fraud.

Regarding Jones and Shaw's request for judicial notice, they rely on inapplicable state law and fail to specify the facts they want judicially noticed (the fact that the conferences occurred in the domestic-dispute matter, that particular people made particular statements during those conferences, that particular asserted facts are true, etc.). *See generally* Doc. 126 at 7. And for the April 25 conference, they fail to provide the alleged video of the proceeding. Without a clearly articulated request or sufficient briefing, judicial notice is unwarranted. In any event, dismissal or other sanctions are unwarranted whether or not the transcript and the asserted statement on video are considered.

Denying Jones and Shaw's motion to dismiss the action, for unspecified other sanctions, and for judicial notice is warranted.

**B.    *Maxum's Response to the Order to Show Cause and Motion to Re-join Fun Zone***

Maxum, through original counsel, responds to the order to show cause by explaining that, based on the order declining to enforce the stipulation of Maxum, Jones, and Shaw, Maxum "immediately re-appointed counsel to represent Fun Zone" in the state actions and "is providing the defense subject to a complete reservation of rights." Doc. 120 at 2. Maxum argues that because it now has resumed providing Fun Zone a defense in the state actions, this action is ripe, all factors favor exercising discretion to provide declaratory relief, and without that relief the parties will face "hardship" insofar as they have an interest in prompt resolution of the coverage issue. Doc. 120 at 3–6.

In the response to the order to show cause and the motion to re-join Fun Zone, Maxum argues Fun Zone is a necessary party under Federal Rule of Civil Procedure 19(a) and should be re-joined as a defendant.[26] Doc. 120 at 6–7; Doc. 121 at 3. According to Maxum, (1) this Court cannot completely resolve Maxum's duty to defend and indemnify under the policy without including Fun Zone as a party and (2) Fun Zone's absence "places Maxum in the position of facing inconsistent obligations under the policy." Doc. 120 at 6–7; Doc. 121 at 3.

Maxum contends "Fun Zone's joinder does 'not deprive the court of subject matter jurisdiction.'" Doc. 121 at 3 (quoting Fed. R. Civ. P. 19(a)(1)). Maxum states, "Fun Zone is a limited liability company. Its sole member is McNeal. (DE 27, Pgs. 4–6.) McNeal is a citizen of Florida. (DE 13 ¶ 6.) Accordingly, there is complete diversity between Maxum (a citizen of Georgia and Connecticut) and all defendants (citizens of Florida)." Doc. 121 at 3. For the statement that McNeal is the sole member of Fun Zone, Maxum cites its earlier filing, Doc. 27, in which it relied largely on Patel's deposition that McNeal challenged in his terminated motion to quash, Doc. 33.

Maxum continues, "Because joinder of Fun Zone is 'feasible,' it is unnecessary to consider the factors under Rule 19(b). And since Fun Zone is a required party under Rule 19(a)(1), the Court should order that Fun Zone be made a party." Doc. 121 at 3–4.

---

[26]Besides Rule 19(a), Maxum cites but does not discuss Rule 15(a) (rule governing pre-trial pleading amendments) and Rule 21 (rule permitting court to add or drop party on motion or on own at any time on just terms). Doc. 121 at 1, 4. Taking this cue from Maxum, the undersigned does not further discuss those rules.

Jones and Shaw respond first with procedural arguments for denying the motion: (1) Maxum sought to confer just hours before filing the motion, Maxum failed to follow-up to obtain their position, and Maxum took three days to notify the Court of their objection; and (2) Maxum failed to include in the title of the motion that Maxum seeks leave to file the motion while the case is stayed. Doc. 123 at 1–3; Doc. 123-1 (letter to Jones and Shaw from Maxum's original counsel); Doc. 123-2 (emails to Maxum's original counsel from Jones and his wife and Shaw and his wife). They also respond with the substantive argument that providing Maxum relief is unwarranted because the procedural history evinces "undue delay," "bad faith," and "deceptive practice" by Maxum. Doc. 123 at 3–7.

Rule 19 governs mandatory joinder of a party, *Molinos Valle Del Cibao, C por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011), including in a declaratory-judgment action, *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 294 (10th Cir. 1975) (citing 6A Moore, *Federal Practice & Procedure* § 57.25 (1974)).[27]

Under Rule 19(a)—the necessary-party provision—a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if, "in that person's

---

[27]"A party does not waive the defense of failure to join an indispensable party by neglecting to raise it; an objection can be raised at any time even by a reviewing court on its own motion[.]" *Kimball v. Florida Bar*, 537 F.2d 1305, 1307 (5th Cir. 1976); *accord* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1609 (3d ed. Oct. 2020 update). "[T]he possible effects of a judgment on an absent person do not deprive a federal court of jurisdiction; rather, the court must consider the joinder issue under the practical and equitable standards of Rule 19(a) and (b)." *Cas. Indem. Exch. v. Vill. of Crete*, 731 F.2d 457, 461 (7th Cir. 1984). "In the absence of an indispensable party, the federal courts are no more empowered to render a declaratory judgment than … to give affirmative relief." *Kimball*, 537 F.2d at 1307.

absence, the court cannot accord complete relief among existing parties," or if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence" may "as a practical matter impair or impede the person's ability to protect the interest" or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A), (B)(i)–(ii).

In *Provident Tradesmens Bank & Trust Co. v. Patterson*—an action seeking a declaration about insurance-policy coverage—the Supreme Court assumed the insured "falls within the category of persons" who should be joined under Rule 19(a). 390 U.S. 102, 108 (1968). The Court explained the insured, faced with the possibility of judgments against him, has an interest in having the "fund" preserved to cover potential liability, and there is at least a possibility that a judgment in the declaratory-judgment action might impede his ability to protect his interest or lead to later re-litigation by him. *Id.*

If a person fits Rule 19(a) but cannot be made a party without destroying diversity, the court must determine under Rule 19(b)—the indispensable-party provision—whether, "in equity and good conscience," the action "should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Rule 19(b) lists non-exclusive factors. *Molinos*, 633 F.3d at 1344. The factors are: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4)

"whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)–(4). Despite listing factors, Rule 19(b) requires not an analysis wrapped up in "formulas," but an analysis based on "the context of particular litigation" and a "pragmatic" approach leading to "practical and creative justice." *Provident*, 390 U.S. at 119 n.16.

Due to this pragmatic, case-by-case approach, decisions on whether an insured is indispensable in a declaratory-judgment action "have not been uniform," with variances dependent on the facts.[28] David A. Johns, *Insured as Indispensable or Necessary Party in Federal Court Action Between His Liability Insurer and Actual or Potential Tort-Claimants*, 8 A.L.R. Fed. 738 (originally published in 1971; updated weekly); *accord* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1609 (3d ed. Oct. 2020 update).

Rule 19(a) requires an assessment of subject-matter jurisdiction in the joinder analysis. Fed. R. Civ. P. 19(a). "Courts of the United States are of limited jurisdiction, and the cases of which they have cognizance are specially circumstanced." *Birmingham Post Co. v. Brown*, 217 F.2d 127, 130 (5th Cir. 1954) (cleaned up). As courts of limited jurisdiction, they must "scrupulously confine their own jurisdiction to the precise limits [the law has] defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[28]Decisions on whether a tort claimant is indispensable in a declaratory-judgment action by an insurer generally hold yes based on common factors. *See, e.g., Ranger Ins. Co. v. United Hous. of New Mexico, Inc.*, 488 F.2d 682, 684 (5th Cir.1974); *Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005).

Under the diversity jurisdiction statute, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." 28 U.S.C. § 1332(a)(1).

A "limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). To determine the citizenship of a limited liability company, a court may not "consult the citizenship of less than all of the entity's members." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990); *see also Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011) (same).

Federal courts presumptively lack subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). To rebut the presumption, the "burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof." *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975); *see also King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) (explaining party seeking to invoke diversity jurisdiction has burden to prove diversity). The former Fifth Circuit emphasized:

> No matter how the issue is raised, whether by motion, by answer, or upon the Court's own initiative, the burden of proving all jurisdictional facts rests upon the plaintiff or person asserting that the Court has jurisdiction.
>
> …
>
> As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly

> in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure.

*Birmingham Post*, 217 F.2d at 130, 131.

To satisfy its burden, the party invoking federal jurisdiction must prove by a preponderance of the evidence facts supporting the existence of jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

Courts "must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century." *Purchasing Power, LLC*, 851 F.3d at 1228. "In the end, when the parties do not do their part, the burden falls on the courts to make sure parties satisfy the requirements of diversity jurisdiction." *Id.*

A district court "has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Parties may stipulate to facts that bear on jurisdiction but not to jurisdiction itself. *Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade Cnty.*, 122 F.3d 895, 905 (11th Cir. 1997).

If a federal court does have jurisdiction, its obligation to hear and decide the case "is virtually unflagging." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2013) (cleaned up).

But this is not so in the declaratory-judgment context.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "On its face, the [Act] provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration.'" *Id.* (quoting 28 U.S.C. § 2201(a)). Through the Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288.

Thus, district courts "possess discretion in determining whether and when to entertain an action under the … Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites," *id.* at 282, with "the normal principle that federal courts should adjudicate claims within their jurisdiction" yielding to "considerations of practicality and wise judicial administration," *id.* at 288. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.*

"When all is said and done … the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287 (cleaned up); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251 (11th Cir. 2019) ("Overturning a district court's denial of declaratory relief … requires a heavy lift. Not only do we review this matter only for abuse of discretion, but the district court's initial decision has an explicitly wide range of discretion.").

36

Still, "[i]n the exercise of their sound discretion to entertain declaratory judgment actions the district courts may not decline to provide declaratory relief on the basis of whim or personal disinclination; but they may take into consideration the speculativeness of the situation before them and the adequacy of the record for the determination they are called upon to make, as well as other factors[.]" *Angora Enters., Inc. v. Condo. Ass'n of Lakeside Vill., Inc.*, 796 F.2d 384, 387 (11th Cir. 1986) (cleaned up).

The "mere fact" that state action is pending does not mean federal declaratory-judgment action cannot proceed. *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989), *abrogated on other grounds*, *Wilton*, 515 U.S. at 277. Rather, in *Ameritas Variable Life Ins. Co. v. Roach*, the Eleventh Circuit described nine non-exhaustive factors to consider "in balancing state and federal interests" where a state action is pending:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d 1328, 1331 (11th Cir. 2005).

Separately but similarly, the Eleventh Circuit has recognized "prudential limitations on the kinds of cases that a court has power to decide." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379 (11th Cir. 2019). "Those prudential concerns counsel judicial restraint and prevent courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."[29] *Id.* at 1379–80 (cleaned up). "Based on these interests, courts decide only cases that are ripe for their review," considering, on a case-by-case basis, "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."[30] *Id.* (cleaned up). "If a claim is fit for judicial decision, that is

---

[29]Outside the declaratory-judgment context, the Supreme Court has called into question jurisprudence distinguishing between constitutional ripeness and prudential ripeness, explaining that the suggestion that a claim is nonjusticiable on prudential grounds rather than constitutional grounds "is in some tension" with the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).

[30]Even if an action is "unripe" at its inception, later events can make it ripe for review. *Yacht Club Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 878 (11th Cir. 2015); *Yacht Club Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 922–23 (11th Cir. 2013).

end of the inquiry, and the matter is ripe, given that the absence of a hardship cannot tip the balance against judicial review[.]" *Id.* (cleaned up).[31]

Here, at the outset, this Court questioned diversity jurisdiction because Maxum failed to identify in the complaint Fun Zone's members and their citizenships. *See* Doc. 1 ¶¶ 2, 5–8; Doc. 3. As the litigation progressed and the difficulty of determining Fun Zone's members and their citizenships became apparent, this Court presciently suggested that proceeding in state court would allow the parties to direct their resources away from the issue of diversity jurisdiction and to the issue of coverage. *See* Doc. 86 at 22–25; Doc. 116 at 5–6. Maxum instead chose another path to avoid the otherwise unresolved issue of diversity jurisdiction, dismissing Fun Zone to establish diversity jurisdiction and to enable the Court to adjudicate the rights of the remaining parties through their stipulations. Doc. 44 at 1.

In now seeking to re-join Fun Zone under Rule 19(a), Maxum boldly, matter-of-factly, and perplexingly asserts Fun Zone's presence does not "deprive the court of subject matter jurisdiction" because Fun Zone's only member is McNeal and he is a Florida citizen, citing its filing in which it relied

---

[31]Fifth and Eleventh Circuit jurisprudence on prudential ripeness in a declaratory-judgment action by an insurer has not always been clear. *See American Fidelity & Casualty Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (affirming decision to decline to exercise jurisdiction over insurer's declaratory-judgment action involving apportionment among insurers and stating court should not judge questions that "may readily be imagined, but may never in fact come to pass"); *Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) (explaining *American Fidelity* held "no action for declaratory relief will lie" to establish insurer's liability "until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"); *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984) (clarifying that *American Fidelity* "cautioned" against exercise of jurisdiction over declaratory-judgment action where question of apportionment of insurance coverage may never arise due to lack of judgment establishing insured's liability); *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 775 n.10 (11th Cir. 2011) (explaining that *Edwards* distinguished *American Fidelity*).

on Patel's challenged deposition testimony and records from 2016 and 2017 that Maxum took too much liberty in describing. *See* Doc. 121 at 3 (relying on Docs. 27–27-8); *see also infra* footnotes 10–15. Maxum fails to mention, much less address, the Court's later admonition that it would not "close [its] eyes" to the continuing unknowns about Fun Zone's membership. Doc. 86 at 21.

Though Maxum disregards it in its recent filings, the fact remains that, despite numerous opportunities during nearly three years of litigation, Maxum has never proved by a preponderance of the evidence diversity jurisdiction because Maxum has never proved by a preponderance of the evidence Fun Zone's members and their citizenship when Maxum brought this action on April 11, 2018. McNeal? McNeil? McNeil's spouse? Pete Pital? Antwain Pital? Suresh Kumar Patel? Girish Patel? Mike Patel? Members of Fortune Amusement, LLC? All are contenders, with all having been mentioned as having had an association with Fun Zone or the property on which the shooting occurred since 2015, with no one eager to claim membership in, or even association with, a dissolved company facing multiple lawsuits. *See* Docs. 5, 14-1, 27-1, 27-2, 27-3, 27-4, 27-5, 27-8, 101-3, 101-4, 101-6, 124-3.

Maxum does not request an additional opportunity to try to satisfy its jurisdictional burden, and giving Maxum that opportunity sua sponte is unwarranted. A speedy and inexpensive determination of this action has long since been unrealizable, and no end would be in sight were satellite litigation resumed. Because Maxum has failed to satisfy its jurisdictional burden, granting its motion to join Fun Zone under Rule 19(a) is unwarranted.

Without joinder of Fun Zone, the only defendants remaining are Jones and Shaw. Regardless of how the issue is framed (whether Fun Zone is an indispensable party under Rule 19(b), whether this Court should decline to

exercise jurisdiction under the *Ameritas* factors, or whether this Court should decline to exercise jurisdiction based on prudential ripeness concerns), the end result is the same: dismissal without prejudice.

Four considerations—all pertinent to indispensability, discretion to decline exercising jurisdiction, and prudential ripeness—overwhelm the usefulness of declaratory relief for Maxum, Jones, and Shaw and support dismissal without prejudice, even without considering that the lawsuit's three-year anniversary is approaching and there are more than 135 docket entries with little or no progress on the merits.

First, without Fun Zone, a decision here would not settle the controversy because the decision would not bind non-party Fun Zone—the named insured. Second, Maxum can seek relief in a forum—state court—where diversity jurisdiction would not steal all the attention. *See* Fla. Stat. § 86.021 (Florida's declaratory judgment law); *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9–18 (Fla. 2004) (holding court in its discretion can decide policy coverage before trial of the underlying tort claim). Third, Jones's and Shaw's state actions are ongoing, continuing the possibility that Fun Zone will face no adverse judgment and that no ruling on indemnity will be necessary. Fourth, a ruling on indemnity would require consideration of the facts of the shootings and possibly Jones's and Shaw's relationship with Fun Zone (employee? contractor? laborer?) better left developed in the state actions where tort and employment liability are being hammered out. *See Alicea Enters., Inc. v. Nationwide Ins. Co. of Am., Inc.*, 252 So. 3d 799, 802 (Fla. 2nd DCA 2018) (explaining that under Florida law, to determine if insurer must indemnify insured for damages from legal action, court considers insurance contract and actual facts, which often develop during discovery or trial in that legal action).

Dismissal without prejudice therefore is warranted. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) (observing in dictum that courts may "refuse declaratory relief for nonjoinder of interested parties who are not, technically speaking, indispensable"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 769–70 (11th Cir. 2019) (affirming dismissal of declaratory-judgment action by insurer against insured based on prudential ripeness concerns where insurer sought declaration it had no duty to indemnify insured in pending state action); *James River Ins. Co. v. Cantrell*, No. 6:19-cv-1398-Orl-41LRH, 2020 WL 3035237, at *2–3 (M.D. Fla. Mar. 26, 2020) (dismissing without prejudice declaratory-judgment action by insurer based on prudential ripeness concerns; "[T]he underlying action is ongoing. … Plaintiff's insureds, and thus Plaintiff, have not been deemed responsible for any damages in the underlying action. Thus, it is entirely possible that Plaintiff will not be liable for any damages in the underlying action, in which case the issue of Plaintiff's duty to indemnify—or a need for the Court to determine the limits of the indemnification by determining which policy applies—will never arise.").[32]

---

[32]In *First Mercury Ins. Co. v. Excellent Computing Distrs., Inc.*, the Eleventh Circuit, in an unpublished decision, reversed an order dismissing an insurer's declaratory-judgment action based on pendency of a tort claimant's state action because the district court failed to provide sufficient reasoning to enable meaningful review on what facts had to be determined in the state action and relied primarily on the possibility that the insured's liability to the tort claimant would never arise without considering the "potential that an insurance coverage determination could serve a useful purpose in clarifying the legal relations at issue." 648 F. App'x 861, 866 (11th Cir. 2016).

The undersigned reads *First Mercury* to require in each case not a detailed analysis of each *Ameritas* factor or a detailed description of each fact that must be determined in the state action but only enough analysis to enable meaningful review, which will depend on the particular circumstances of each case. *See James River*, 2020 WL 3035237 at *2 n.2 (distinguishing *First Mercury* and finding consideration of *Ameritas* factors unnecessary if dismissal without prejudice is based on prudential ripeness concerns). The undersigned aims

## IV.   Recommendations[33]

The undersigned recommends:

(1)   **denying** Jones and Shaw's motion to dismiss the action, for unspecified other sanctions, and for judicial notice of proceedings, Doc. 126;

(2)   **denying** Maxum's motion to join Fun Zone, Doc. 121;

(3)   **finding** Maxum failed to show cause why this Court should not dismiss this action without prejudice or continue a stay, Doc. 119;

(4)   **dismissing** this action without prejudice; and

(5)   **directing** the clerk to terminate any pending motions and close the file.

**Entered** in Jacksonville, Florida, on February 5, 2021.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Charles Shaw
P.O. Box 1352
Lake City, FL 32056

---

to provide sufficient reasoning in this report and recommendation using a pragmatic approach and discerns no need for additional detail in an already lengthy report and recommendation.

[33]Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Terrance Jones
596 Northeast Aberdeen Ave.
Lake City, FL 32055